## Commonwealth *v.* Ambers, Appellant.

Argued June 12, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Paul A. Prince,* Assistant Public Defender, for appellant.

*J. David Bean,* Assistant District Attorney, with him *Stewart J. Greenleaf,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 19, 1973:

Appellant contends that this Court should reverse his conviction for conspiracy to possess narcotics and possession and use of narcotics because his conviction was based on an unlawful search and seizure and insufficient evidence.

On September 13, 1971, appellant's wife informed the Lansdale police department that her husband violated his probation by checking into Montgomery Hospital for treatment related to drug use. She also stated that he could be found in Ann Winters' apartment—Apartment B-3, Kenilworth Court Apartments in Lansdale. On the following day, an informant corroborated Mrs. Ambers' statement and provided the police with other information regarding Ambers and Winters. On the basis of this information a Lansdale police detective appeared before District Judge Sherwood ZEPP at 3:00 p.m. on September 14 and presented him with the following affidavit:

"5. The facts upon which I rely and which I believe establish probable cause for the issuance of a search warrant are: based on information from a confidential informant, who has supplied information in the past which proved reliable and resulted in at least (5) arrests who stated that one Thomas AMBERS, a convicted drug user (recently discharged from Montgomery Hospital for drug addiction) is presently on premises,

along with Ann WINTERS (Lessee of Apt) and they are in possession of and using HEROIN.

"That said informant, through personal conversation with AMBERS and WINTERS was advised they are 'holding'. In addition informant has on many previous occasions witnessed HEROIN and paraphernalia being used, possessed and controlled by AMBERS, WINTERS and others.

"That this officer (affiant) on several occasions has confiscated drugs & paraphernalia in adjacent laundryroom, there concealed by WINTERS."

The detective also provided the Justice with the following oral information: (1) the content of his conversation with Mrs. Ambers; (2) That subsequent to his discovery of heroin in the laundryroom, he warned Winters not to hold heroin; and (3) The names of people whose arrests were based on the informant's earlier tips. Given these facts, the Justice issued a search warrant for the Winters' apartment.

Armed with this warrant four members of the Lansdale police proceeded to the apartment and knocked on the door which had a peephole. The police testified that they heard footsteps approaching the door followed by footsteps and scuffling retreating from the door of the apartment. The detective then knocked again and announced: "Police, we have a warrant." Following a fifteen to thirty second delay, the officer forced the door. They found the appellant in the living room and Winters, her child, and another woman in the bedroom. The officers read the search warrant to Winters, the lessee of the apartment. In searching the premises, the officers found heroin and other drug paraphernalia in the kitchen and the bathroom. Both Ambers and Winters were under the influence of heroin at this time.

"The test for determining the validity of a search warrant is that pronounced in the leading case of Aguilar v. Texas, 378 U.S. 108 (1964) . . . an affidavit

may be based on hearsay information and need not reflect the direct personal observations of the affiant provided the magistrate is informed of some of the underlying circumstances from which the ... *officer* concludes that the informant, whose identity need not be disclosed, is credible or his information reliable. Thus briefly in recapitulating, Aguilar sets forth two requirements which must be met in the affidavit before a search warrant can be properly issued: (1) the setting forth of underlying circumstances from which the *informer* concludes the items in issue are where he said they were and, (2) the setting forth underlying circumstances from which the *officer* affiant concludes that the informer is credible or his information reliable." *Commonwealth v. Somershoe*, 215 Pa. Superior Ct. 246, 249-250, 257 A. 2d 341 (1969). The first requirement may be met where the affidavit either sets forth the manner in which the informant obtained his information or describes the criminal activity in detail. *Commonwealth v. Soychak*, 221 Pa. Superior Ct. 458, 465, 289 A. 2d 119 (1972). The second requirement may be met in several ways, one of which is by establishing the informant's past reliability. *Commonwealth v. Soychak*, supra, 221 Pa. Superior Ct. at 464. In determining whether or not the *Aguilar* test has been met, the courts may consider the oral testimony presented to the magistrate as well as the affidavit. *Commonwealth v. Fisher*, 223 Pa. Superior Ct. 107, 110, 296 A. 2d 848 (1972).

The circumstances from which the informant concluded that there was heroin in the apartment were set forth in the affidavit; Ambers told the informant about the heroin in the Winters' apartment on the morning that the warrant was issued. The informant's credibility also was satisfactorily established for his tips had led to five prior arrests. Thus, the *Aguilar* test was met herein. Nevertheless, appellant contends that the search warrant should not have been issued because the evi-

dence presented to the magistrate was unsubstantiated hearsay. There are four factors which should be considered in determining whether or not there is a substantial basis for crediting the hearsay: (1) Did the informant give prior reliable information? (2) Was the informant's story corroborated by any other source? (3) Were the informant's statements a declaration against interest? (4) Does the defendant's reputation support the informant's tip? *Commonwealth v. Falk,* 221 Pa. Superior Ct. 43, 46-47, 290 A. 2d 125 (1972). Each and every factor need not be satisfied for the court to uphold the validity of the warrant, but three were satisfied herein. First, the informant had provided the police with information leading to five prior arrests. Second, Ambers' presence in Winters' apartment was corroborated by Mrs. Ambers. Third, appellant was known to the police to be a narcotics user. Thus, there is a substantial basis for crediting the hearsay present in the affidavit.

Appellant also alleges that the affidavit was defective because no time was given establishing the date of the conversation between the appellant and the informant. This allegation is unfounded; the magistrate knew that Ambers spoke to the informant and told him that there was heroin in the apartment on the day the warrant was issued.

Appellant further contends that the affidavit upon which the search warrant was based contained the following erroneous information: (1) Ambers was a convicted drug user; (2) Winters had concealed drugs and paraphernalia in the laundry room adjacent to the apartment; and (3) The informant received his information in conversations with both Ambers and Winters. Only the third point was a clear misstatement of fact; the informant had only spoken to Ambers. Courts will not invalidate search warrants based on illegally obtained evidence provided that "there are *sufficient valid*

*grounds* in the present affidavit to constitute probable cause." *Commonwealth v. Soychak,* supra, 221 Pa. Superior Ct. at 464 (emphasis added). Analogously, the presence of a misstatement of fact in an affidavit will not invalidate a search warrant provided that the affidavit includes sufficient valid facts to constitute probable cause. Although a misstatement may be so egregious as to require the invalidation of a warrant, this is not the case herein.

In *Commonwealth v. Hall,* 451 Pa. 201, 302 A. 2d 342 (1973), the Supreme Court held that a defendant has a right to cross-examine an affiant at a suppression hearing with respect to prior arrests produced by the informant's tips. *Hall* recognized that an informant's reliability is best tested by a full examination of the truthfulness of these earlier tips. In the instant matter, appellant erroneously contends that he was denied his right to test the informant's reliability. Since appellant's counsel was permitted to thoroughly cross-examine the affiant concerning prior tips given by the informant, the requirements of *Hall* were met.

Having decided that the search warrant was properly issued, this court must determine whether or not the warrant was executed in accord with the law. Appellant contends that the officers, who executed the warrant herein, did not give him sufficient time to surrender his privacy voluntarily.

"In determining the propriety of the officers' actions, we begin by noting that the police are not required to execute every warrant in identical fashion. Rather, they are permitted flexibility to adapt their execution procedures to fit the needs of particular situations. . . .

"Under normal circumstances the police are required to give notice of their identity and purpose before attempting to enter private premises. Commonwealth v. McCloskey, 217 Pa. Superior Ct. 432, 272 A. 2d 271

(1970). However, this notice requirement is designed not to afford the suspects time to destroy evidence, but to give them an opportunity to surrender their privacy voluntarily. Accordingly, if the suspects bar access to their premises after notice is given, and use the intervening time to destroy evidence, the police are then entitled to initiate their search by whatever means are reasonably available to them." *Commonwealth v. Soychak,* supra, 221 Pa. Superior Ct. at 467. In the instant matter, the officers knocked and heard an occupant approach and retreat from the door without permitting them to enter. The detectives again knocked, announced their identity and purpose, and waited approximately one-half a minute before forcing the door. This case is controlled by *Commonwealth v. Dial,* 445 Pa. 251, 254-255, 285 A. 2d 125 (1971): "In the instant case, the police testified that they announced their presence, announced that they had a warrant, and requested that someone 'please, open-up' this door. Thus, unlike the situation in Newman, the police did announce their identity, authority and purpose. Then, according to police testimony, they heard the sound of running from inside the apartment. This factor, the sound of running, distinguishes this case from Commonwealth v. DeMichel, 442 Pa. 553, 277 A. 2d 159 (1971), where we held that a five to fifteen second delay, alone, cannot constitute support for a belief that evidence was being destroyed. We agree with the opinion of the Superior Court that 'When they heard sounds of running and the door was not opened, they were warranted in thinking that they were refused admittance and that an effort was underway to destroy evidence. They did not need to wait until the evidence was destroyed.' McClure v. United States, 332 F. 2d 19 (9th Cir. 1964), cert. denied, 380 U.S. 945 (1965); Masiello v. United States, 317 F. 2d 121 (D.C. Cir. 1963); Commonwealth v. Dial, 218 Pa. Superior Ct. 248, 276 A. 2d 314

(1971)." Thus, the search warrant was properly executed to prevent the destruction of evidence.

Lastly, appellant contends that the evidence was insufficient to convict him of the crimes with which he was charged. "Presence at the scene of the crime is not of critical importance in a drug possession case. Commonwealth v. Reece, 437 Pa. 422, 427, 263 A. 2d 463 (1970). In the crime of narcotics possession, presence at the scene alone cannot implicate a party in the crime which 'by its very nature is unique to the individual. By definition, the possessor is the only person who could commit this crime:' Reece, supra." *Commonwealth v. Updegrove,* 223 Pa. Superior Ct. 7, 9, 296 A. 2d 854 (1972). If, however, the party's presence at the scene is coupled with evidence linking him to the narcotics, there is sufficient evidence to convict the party of possession of narcotics. (In *Updegrove,* the court held that there was sufficient evidence to convict the appellant of possession of LSD where LSD was found lying among the appellant's possessions in another person's apartment). Given that the appellant was under the influence of heroin at the time that narcotic was discovered in the apartment, there was sufficient evidence to convict him of possession of heroin. Viewing the evidence in the light most favorable to the Commonwealth, *Commonwealth v. Johnston,* 438 Pa. 485, 488, 263 A. 2d 376 (1970), there is also sufficient evidence to convict appellant of conspiracy to violate The Drug, Device, and Cosmetic Act.[1]

---

[1] Appellant asserts that *Commonwealth v. Tirpak,* 441 Pa. 534, 272 A. 2d 476 (1971) requires a reversal of his conviction. In *Tirpak,* the police found seven people surrounding an open jar of marijuana located in the game room of a house. The occupant of the house and four of her six guests were charged with possession and use of narcotics; the occupant pled guilty to these charges. The Supreme Court, however, reversed the conviction of her guests finding insufficient evidence to convict them on those charges. The

Appellant was sentenced to a term of imprisonment of six months to two years for possession and use of heroin; sentence was suspended on the conspiracy count. This is an excessive sentence under The Controlled Substance, Drug, Device and Cosmetic Act of 1972. *Commonwealth v. Santiago,* 223 Pa. Superior Ct. 493, 496, 305 A. 2d 378 (1973).

Accordingly, this case is remanded for resentence and affirmed on all other grounds.

instant matter is distinguishable from *Tirpak.* The lessee of the apartment herein did not plead guilty to the charge of drug possession as did the occupant in *Tirpak.* Where the owner or occupant of an apartment pleads guilty to possession of narcotics, the mere presence of another person on the premises is insufficient evidence to link that person with possession of the drugs. In *Tirpak,* the only link between the guests and the marijuana was their presence at the scene. Unlike the instant case, the guests in *Tirpak* were not under the influence of marijuana when the search was conducted. Appellant's being under the influence of heroin at the time of the search linked him to the presence of the heroin in the apartment. Thus, the factfinder correctly concluded that the appellant was guilty as charged.