Commonwealth *v.* Lucchese, Appellant.

Argued December 4, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, and SPAETH, JJ. (VAN DER VOORT, J., absent).

*Emmanuel H. Dimitriou,* with him *G. Alan Kramer,* and *Lieberman, Dimitriou & Kramer,* for appellant.

*Grant E. Wesner,* Deputy District Attorney, with him *Robert L. VanHoove,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., March 31, 1975:

After a trial by jury, appellant was found guilty of poolselling and bookmaking, but not guilty of establishing a gambling place. This appeal arises from the lower court's denial of appellant's post-trial motions for an arrest of judgment or a new trial. This multi-pronged appeal alleges, inter alia, the following errors below:

1) Newspaper articles, setting forth testimony presented at a suppression hearing held in closed session in accordance with Pa. R. Crim. P. 323(f), violated his right of a fair trial;

2) The affidavit supporting the search warrant is defective;

3) The defective affidavit vitiated the search warrant, rendering the subsequent search of defendant's home illegal, and the evidence obtained thereby, inadmissible;

4) The evidence is too "remote" to support a finding of defendant's guilt;

5) The police officer's answering of a telephone call at defendant's home during the time of search was a wrongful invasion of his right to privacy.

The affiant alleges in the affidavit[1] that he received information from an informant who had proved reliable

---

1. The affidavit in the instant case was supplemented by a rider. For the sake of convenience, both documents shall be treated herein as one, and referred to as the affidavit.

in the past on the basis of his having given information leading to arrests and convictions in other cases. The affidavit also alleged that Mr. Lucchese was accepting horse and sports bets over the phone in his Reading home. On the strength of this information Lucchese's house was placed under surveillance. While one officer watched the house, the informant, in the presence of the affiant, telephoned Lucchese's home and placed sports bets on both January 29, 1972, and February 2, 1972. The informant then apprised the affiant that Mr. Lucchese had answered and accepted the bets. The observations of the other police officer indicated that, on both occasions, Mr. Lucchese was home.[2]

The affidavit in support of the search warrant was sworn to on February 5, 1972, and served on the appellant at home at roughly 5:30 P.M. The search uncovered 11 sheets denoting bets on horse races for the period of January 10, 1972, through January 15, 1972. During the officers' presence at Lucchese's home one of the officers answered a telephone call for Lucchese. The unidentified caller, after some preliminary conversation, said: "Get this, Milwaukee, 240 to 2; Chicago, 150 to 120; Knicks, 150 to 120; Cincinnati, 240 to 200; Atlanta, 120 to 1."

Appellant's first contention that the instant case must be dismissed because Pa. R. Crim. P. 323(f) was violated has no merit. Prior to the suppression hearing

---

2. At the suppression hearing the officer who had watched the house testified, but not with certainty, that on January 29th he had observed Lucchese leave his house at 7:10 P.M., get into his Cadillac and drive south. He also testified that he observed no one leave the Lucchese home during the time the bet was placed. Mr. Lucchese sought to rebut this evidence by proving that he was in Philadelphia on January 29th, and out to dinner with his family at the relevant time on February 2nd. Although these alibis were corroborated, the court chose to believe the police version of appellant's whereabouts. We cannot now find that the court acted unreasonably in so doing.

in this case, appellant moved that the hearing be conducted pursuant to Rule 323(f), which provides: "The suppression hearing, either before or at trial, shall be held in open court unless defendant, by his counsel, moves that it be held in the presence of only the defendant, counsel for the parties, court officers and necessary witnesses. In any event, the hearing shall be held outside the hearing and presence of the jury. In all cases the court may make such order concerning publicity of the proceedings as it deems appropriate under Rules 326 and 327." Although the court granted the motion, a newspaper published portions of the testimony offered despite this precaution. Appellant claims that this "leak" automatically entitles him to be discharged despite the fact that the Commonwealth has not been shown to be the source of the newspaper's information, and despite the fact that appellant has not demonstrated that the pretrial publicity prejudiced his right to a fair trial.

The Supreme Court stated in *Sheppard v. Maxwell*, 384 U.S. 333, 349-350 (1966) that: "The principle that justice cannot survive behind walls of silence has long been reflected in the 'Anglo-American distrust for secret trials.' A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism. This Court has, therefore, been unwilling to place any direct limitations on the freedom traditionally exercised by the news media for '[w]hat transpires in the court room is public property.' The 'unqualified prohibitions laid down by the framers were intended to give to liberty of the press . . . the broadest scope that could be countenanced in an orderly society.' And where there was

'no threat or menace to the integrity of the trial,' we have consistently required that the press have a free hand, even though we sometimes deplored its sensationalism." (Citations omitted.)

Of course, there are limitations upon the freedom of the press, as when the method, content or intensity of publicity jeopardizes an accused's right to a fair trial. Thus, in *Estes v. Texas*, 381 U.S. 532, 539 (1965) the Supreme Court noted: "The free press has been a mighty catalyst in awakening public interest in governmental affairs, exposing corruption among public officers and employees and generally informing the citizenry of public events and occurrences, including court proceedings. While maximum freedom must be allowed the press in carrying on this important function in a democratic society its exercise must necessarily be subject to the maintenance of absolute fairness in the judicial process."

The policy of the law is therefore clear, that although there is a recognized potential for abuse inherent in the press's coverage of criminal cases, such publicity is also a valuable asset to justice. Therefore, before such coverage is discouraged or barred the accused must demonstrate a clear potential that his right to a fair trial will be violated. In the instant case this conclusion is fortified by the comment to subsection (f) of Rule 323 which explicitly recognizes that the raison d'etre of the rule is the "injunction" of prejudicial publicity which might jeopardize the accused's right to a fair trial before an impartial jury.

Although the purpose of Rule 323 (f) was frustrated in the sense that testimony at the closed suppression hearing leaked to the press, that unfortunate occurrence, standing alone, does not support appellant's claim that he should be discharged. As mentioned above, appellant has not demonstrated that he was prejudiced by the publicity, nor has he shown that the leak was attributable

to action or inaction by the Commonwealth.[3] The question of prejudice could have been focused upon, and the possibility of prejudice avoided, by conducting a full voir dire under Pa. R. Crim. P. 1107, or by motion for a change of venue under Rule 313. See *Commonwealth v. Yount,* 455 Pa. 303 (1974). Moreover, the fact that a juror has read a newspaper account concerning the accused and the crime at bar does not require that the juror be excluded for cause. It must be shown that the juror has formulated a fixed opinion precluding him from reaching a verdict based solely on the evidence produced at trial. *Commonwealth v. Yount,* supra; *Commonwealth v. Hoss,* 445 Pa. 98 (1971) ; *Commonwealth v. Swanson,* 432 Pa. 293 (1968), cert. denied 394 U.S. 949 (1969). There being no prejudice shown, the leak did not entitle appellant to be discharged.

The appellant's second argument that the affidavit supporting the search warrant was inadequate in this case also must fail. The informant's reliability was established by his having provided information in past cases which led to arrests and convictions of various persons involved in gambling in Berks County. The telephone calls made by the informant in the presence of the police officer shortly before the warrant issued, the placing of bets at the time, and the informant's identification of the appellant as the person with whom he placed the bets combined with the informant's reliability to provide sufficient underlying circumstances to establish probable cause. *Spinelli v. United States,* 393 U.S. 410 (1969) ; *Aguilar v. Texas,* 378 U.S. 108 (1964) ; *Appeal of Betrand,* 451 Pa. 381 (1973) ; *Commonwealth v. Somershoe,* 215 Pa. Superior Ct. 246 (1969).

---

3. Deliberate efforts by the Commonwealth to vitiate the protection sought to be provided by Rule 323(f) would, of course, pose a stronger case for establishing a prophylactic rule. The policy considerations under those facts would be entirely different from those posed herein. See *Commonwealth v. Williams,* 454 Pa. 368 (1973).

The appellant's contention that the lower court abused its discretion in permitting the Commonwealth to introduce betting slips dated from January 10th to January 15th is likewise without merit. "The question whether evidence of other gambling offenses is to be admitted or excluded on the trial of a gambling offense, where an objection to it on the ground of remoteness is made, rests largely in the sound discretion of the trial judge." Annot., 64 A.L.R.2d 823, 844 (1959). Thus, it has been held that the lower court did not abuse its discretion in allowing evidence of prior gambling offenses simply because the prior acts preceded the commission of the offense then at bar by forty days. *Commonwealth v. Baldassini,* 260 N.E.2d 150 (Mass. 1970).

In the instant case, the gambling slips corroborated the Commonwealth's evidence that Lucchese received bets on the material dates, January 29th and February 2nd, and demonstrated a continuing course of bookmaking by the appellant. Therefore, the lower court acted well within the bounds of its discretion in permitting the evidence to be admitted at trial.

Appellant's final contention that the police violated his right to privacy by answering a phone call at his house while conducting the search must be rejected. This Court has consistently rejected that argument and held that the evidence of such conversations which indicates the placing of bets at the place called is admissible to prove lottery and bookmaking charges. See *Commonwealth v. Bufalini,* 223 Pa. Superior Ct. 489 (1973); *Commonwealth v. Ametrane,* 205 Pa. Superior Ct. 567 (1965); *Commonwealth v. Gurreri,* 197 Pa. Superior Ct. 329 (1962); *Commonwealth v. Smith,* 186 Pa. Superior Ct. 89 (1958).

The judgment of sentence is affirmed.

VAN DER VOORT, J., did not participate in the consideration or decision of this case.