Commonwealth, Appellant, *v.* Archer et al.

104

Argued September 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

Kevin A. Hess, Assistant District Attorney, with him Harold E. Sheely, District Attorney, for Commonwealth, appellant.

Arthur L. Goldberg, with him Goldberg, Evans & Katzman, for appellees.

OPINION BY PRICE, J., December 22, 1975:

Appellees were indicted for pool selling and bookmaking.[1] The lower court sustained appellees' motion to suppress the evidence, and the Commonwealth has appealed. There is no question that this appeal is proper. *Commonwealth v. Deren*, 233 Pa. Superior Ct. 373, 337 A.2d 600 (1975). In spite of an excellent opinion by Judge WEID-

---

1. Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 (18 Pa.C.S. §5514).

NER, we believe the evidence should have been admitted and will, therefore, reverse the suppression order and allow the Commonwealth's use of the evidence.

The record reveals that on October 4, 1974, Trooper George Wynn of the Pennsylvania State Police obtained a search warrant for appellees' residence at 7 Creek Road, Lower Allen Township, Cumberland County, Pennsylvania. The premises and all persons therein were to be searched for gambling paraphernalia.

Trooper Wynn arrived at the premises at approximately 3:00 p.m., accompanied by Troopers Frederick Boyer and Doris Scott. The house was unoccupied at the time, and the officers waited outside until 3:40 p.m., when appellee Mrs. Archer arrived. Trooper Wynn identified himself, told the appellee that he had a search warrant, and accompanied her into the house. The trooper read the probable cause section of the warrant to Mrs. Archer and also the section describing what items were to be seized.

The only evidence uncovered by the search of the premises was a daily racing form. However, a search of Mrs. Archer's pocketbook uncovered two slips containing wagers on horse races, as well as two small books with telephone numbers. In addition, several telephone calls were received at the residence during the search. In every instance, the telephone was initially answered by Trooper Scott. The first caller identified himself as Sam Reiseman from Philadelphia and stated that he wished to speak to "Reb" (a nickname for appellee Lemuel Archer). Trooper Scott informed him that "Reb" was not present, and the caller then asked for "Nanna" (a nickname for Mrs. Archer). Mrs. Archer was immediately handed the telephone. Mrs. Archer told the caller she didn't know why he was calling, and attempted to break the connection. However, Trooper Boyer lifted the receiver on an extension telephone in a nearby room and kept the line open. Trooper Scott then spoke into the telephone, and the man on the other end placed a wager on a horse race.

A second call was from a man named "Doc" who said he was calling for "Phil." He wanted to know why the telephone number had been changed from 6996 (the telephone number at the alleged location of a Dauphin County bookmaking operation). This caller also inquired if the results were in yet. A third caller immediately hung up when Trooper Scott answered the telephone, and a fourth caller stated he had the wrong number and hung up. About a minute later, a fifth call came in. Trooper Scott testified that the voice of this caller sounded like the voice of the fourth caller. This person asked for "Lem," and, when informed that he was not present, left the message, "tell him Clint called and will call back."[2]

We must first examine the officer's written affidavit to determine if adequate probable cause existed to support the issuance of the search warrant.[3] The affidavit, as presented to the magistrate, reads as follows:

"On August 19, 1974, this officer executed a search warrant at 421 S. 17th Street, Harrisburg City, Dauphin County, Penna. The raid resulted in the seizure of gambling equipment & records. One (1) person was arrested for BOOKMAKING. The seized records indicated that this location was being used to receive horse bets from approximately fifteen (15) BOOKMAKERS in Dauphin & Cumberland Counties. The services of a confidential informant were acquired to identify the person(s) running the gambling operation. The informant advised that Lemuel Thomas ARCHER also known as the 'REBEL' is running the gambling operation. The informant indicated that ARCHER did not take the bulk of the action, however, ARCHER is taking action from certain individ-

---

2. Several other calls were received at the house during the search, but they have no relevance to the present case.

3. Only the written statements submitted to the magistrate can be used to support probable cause. Pa.R.Crim.P. 2003(a).

uals at locations in Dauphin & Cumberland Counties. The Dauphin County location is 4913 Virginia Ave., Lower Paxton Twp., phone 717 652 6996. The phone is listed to Lloyd T. BROWN at the same address. The Cumberland County location is 7 Creek Road, Lower Allen Township, phone 717 761 5384. The phone is listed to Lemuel T. ARCHER at the same address.

On 10, 17, & 25 Sept. 74, the informant placed horse bets with ARCHER in Dauphin Co. by calling 717 652 6996.

On 29 Sept. 74, the informant called ARCHER at his residence in Lower Allen Township, Cumberland Co., Penna. by calling 717 761 5384. The informant placed horse bets in the amount of $26.00 on horses performing at the PENN NATIONAL RACE TRACK on 29 Sept. 74. The telephone call was made to ARCHER at 1210 hrs., 29 Sept. 74 in the presence of this officer.

The reliable confidential informant is a person known to this officer. Numerous investigative leads have been furnished to this officer by the informant. All previous information furnished by the informant has been very reliable and accurate. The information furnished by the informant in reference to the illegal activities of Lemuel Thomas ARCHER, also known as the 'REBEL' has been very accurate and reliable.

Based on the herein contained information this officer believes that Lemuel Thomas ARCHER, also known as the 'REBEL' is running an illegal gambling operation in Dauphin & Cumberland Counties. This officer believes that gambling paraphernalia is located at both locations.

The initial information furnished this officer by the confidential informant in reference to telephone numbers & locations of the said telephone numbers was proven to be reliable through further investiga-

tion & surveillance. The information received from the informant relative to Lemuel Thomas ARCHER (REBEL) being involved in the BOOKMAKING was accurate in that ARCHER was placed at 4913 Virginia Ave., Lower Paxton Twp., Dauphin Co., Penna. during the time period that the informant bets were being placed."

The standard for determining the sufficiency of the affidavit was enunciated in the oft-cited case of *Aguilar v. Texas*, 378 U.S. 108 (1964). The Supreme Court of the United States there said:

> "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, (citation omitted), the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the [objects to be seized] were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, (citation omitted), was 'credible' or his information 'reliable.'" 378 U.S. at 114-15.

In effect, the affiant must give facts sufficient to enable the magistrate to make two independent judgments: (1) that the affiant is probably correct in his belief that the informer is reliable, and (2) that what the informer told the affiant is probably accurate.

The first requirement may be met where the affidavit either sets forth the manner in which the informant obtained his information or describes the criminal activity in detail. *Commonwealth v. Samuels*, 235 Pa. Superior Ct. 192, 340 A.2d 880 (1975). The second requirement may be met in several ways: (1) Did the informant give prior reliable information? (2) Was the informant's story corroborated by any other source? (3) Were the informant's statements a declaration against interest? (4) Does the defendant's reputation support the informant's tip?

*Commonwealth v. Ambers,* 225 Pa. Superior Ct. 381, 310 A.2d 347 (1973).

There can be little doubt that the first requirement has been met. The information given by the informant describes in detail the criminal activity, and gives three recent dates when the informant placed bets with Lemuel Archer. This is adequate to satisfy the first of the two prongs of the *Aguilar* test.

Of more vital concern is the establishment of the informant's reliability. While past reliability is most often established through a showing of convictions which resulted from information supplied by the informer, *e.g., Commonwealth v. Williams,* 236 Pa. Superior Ct. 184, 345 A.2d 267 (1975); *Commonwealth v. Ambers, supra,* there is no logical reason for mandating that all information lead to convictions before reliability is established. In the present case, the officer's written statement alleges that the informer supplied "investigative leads," all of which were reliable and accurate. The officer established contact with the informer, indicating he believed the informant was reliable. In addition, the information was corroborated by the trooper when, in his presence, the informer placed a wager on a horse race by calling Archer's home telephone number. Finally, the police were aware of the existence of a large organization involved in illegal betting, and the information supplied by the informer was consistent with this. Thus the second prong of the *Aguilar* test was complied with. *Cf., Commonwealth v. McKeever,* 229 Pa. Superior Ct. 35, 323 A.2d 44 (1974).

Appellees also contend that the subject matter of the telephone calls should not be admitted because the means by which the police obtained this information violated the Pennsylvania anti-wiretapping statute.[4] This con-

---

4. Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 (18 Pa.C.S. §5702), *as amended,* June 27, 1973, P.L. 69, No. 29, §1.

tention is clearly without merit. Our court has consistently rejected such arguments and has held that the evidence of such conversations is admissible to prove the placing of bets and thus sustain charges of lottery and bookmaking. *Commonwealth v. Lucchese,* 233 Pa. Superior Ct. 273, 335 A.2d 508 (1975); *Commonwealth v. DiSilvio,* 232 Pa. Superior Ct. 386, 335 A.2d 785 (1975); *Commonwealth v. Bufalini,* 223 Pa. Superior Ct. 489, 302 A.2d 352 (1973); *Commonwealth v. Gurreri,* 197 Pa. Superior Ct. 329, 178 A.2d 808 (1962).

The order suppressing the evidence is reversed.

---

DISSENTING OPINION BY HOFFMAN, J.:

I would affirm the order of the lower court which suppressed evidence seized pursuant to a search warrant, because the Commonwealth failed to provide the magistrate with sufficient information to enable him to independently conclude that there was probable cause to search appellant's residence.

As a reviewing court, we can sustain the issuance of a warrant only if the affidavits submitted establish probable cause; we cannot consider any other evidence or information: "No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits." Rule 2003(a), Pa.R.Crim.P., adopted March 28, 1973, eff. in 60 days. The affidavit submitted in the instant case contains the following information: (1) The police executed a search warrant on August 19, 1974, in Harrisburg which resulted in the seizure of gambling paraphernalia and the arrest of one person; (2) The police then procured the services of a confidential informant to obtain the identity of the person or persons controlling the bookmaking operation; (3) The informant stated that appellant was accepting bets at the Dauphin County

location and at a Cumberland County location; (4) The informant supplied the telephone numbers and addresses of the two locations; (5) The police determined that the phone numbers were registered to Lloyd Brown and appellant, respectively; (6) The informant stated that he placed bets with appellant on three occasions in September, 1974, by calling the Dauphin County telephone number; (7) The informant dialed appellant's telephone number on September 29, 1974, and placed a bet in the affiant's presence; (8) The informant's prior information was accurate and resulted in "numerous investigative leads"; and (9) The informant's statement that he placed bets with appellant during September was corroborated by police surveillance which placed appellant at the Dauphin County location at those times.

The definition of "probable cause" is well-settled: "The 'probable cause' required for the issuance of a search warrant, as the very term implies, involves probabilities. Probable cause exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' a search should be conducted. Carroll v. United States, [267 U.S. 132 (1925)]." *United States v. Scolnick*, 392 F.2d 320, 323-324 (3d Cir. 1968), cert. denied, 88 S.Ct. 2283. It is also well-settled that a reviewing court must read search warrants with a common sense, ungrudging, and positive attitude, and must find legality whenever possible. See, e.g., *United States v. Ventresca*, 380 U.S. 102 (1965); *Commonwealth v. Simmons*, 450 Pa. 624, 301 A.2d 819 (1973); *Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971). Even when viewed in light of this standard, however, the affidavit in the instant case is deficient.

The affiant requested a warrant to search appellant's premises for gambling paraphernalia relating to the receiving, recording, and forwarding of horse bets. Thus,

the affiant was required to establish that he had probable cause to believe that the paraphernalia was where he claimed it was. In deciding whether or not the affiant did establish probable cause, I find the analysis employed by Justice WHITE in a similar context instructive: "If an officer swears that there is gambling equipment at a certain address, the possibilities are (1) that he has seen the equipment; (2) that he has observed or perceived facts from which the presence of the equipment may reasonably be inferred; and (3) that he has obtained the information from someone else. If (1) is true, the affidavit is good. But in (2), the affidavit is insufficient unless the perceived facts are given, for it is the magistrate, not the officer, who is to judge the existence of probable cause. . . . With respect to (3), where the officer's information is hearsay, no warrant should issue absent good cause for crediting that hearsay." *Spinelli v. United States,* 393 U.S. 410, 423-424 (1969) (Concurring Opinion).

The first possibility in this formulation is not applicable to the instant case because the affiant did not personally observe any gambling paraphernalia in appellant's residence. The Majority, however, concludes that the affidavit is sufficient under the third possibility because there is good cause to credit the hearsay information relied upon by the affiant. In order to sustain an affidavit based on hearsay, the informant's knowledge, if true, must constitute probable cause; the affiant must be credible; and the affidavit must meet the two tests established by *Aguilar v. Texas,* 378 U.S. 108 (1964). See *United States v. Harris,* 403 U.S. 575, 587 (1971) (HARLAN, J., dissenting). If the knowledge attributed to the informant in this case were true, it would constitute probable cause: the informant claims that he personally placed bets which were accepted by appellant on four separate occasions. See *Commonwealth v. Lucchese,* 233 Pa. Superior Ct. 273, 335 A.2d 508 (1975); cf. *Commonwealth v. Manduchi,* 222 Pa. Superior Ct. 562, 295 A.2d 150 (1972). Further, there is no reason for the issuing authority to believe that

this affiant was not truthfully relating what his informant told him. However, the affidavit is insufficient because it does not satisfy *Aguilar v. Texas,* supra.

*Aguilar* requires that (1) the affidavit set forth the underlying circumstances from which the informer concluded that the items to be seized are where he says they are, and (2) the affidavit set forth some of the underlying circumstances from which the affiant concluded that his informant was credible or his information reliable. *Aguilar v. Texas,* supra at 114-115. The affidavit complies with the first prong because the informant concluded that appellant was involved in bookmaking by personally placing bets with appellant at the two locations he specified. Thus, there is no hearsay-on-hearsay difficulty in this case. Cf., *Commonwealth v. Gianelli,* 228 Pa. Superior Ct. 225, 323 A.2d 810 (1974) (HOFFMAN, J., dissenting). The critical question, therefore, is whether the affidavit satisfies the second prong. I believe that it does not.[1]

In *Commonwealth v. Ambers,* 225 Pa. Superior Ct. 381, 386, 310 A.2d 347, 350 (1973), we held that "[t]here are four factors which should be considered in determining whether or not there is a substantial basis for crediting the hearsay: (1) Did the informant give prior reliable information? (2) Was the informant's story corroborated by any other source? (3) Were the informant's statements a declaration against interest? (4) Does the defendant's reputation support the informant's tip?"

---

1. Judge WEIDNER framed the issue as follows: "Thus, the sole albeit critical question before the court is whether the informant's credibility, or his informations' reliability has been shown by the nature of the information, *Draper v. United States,* 358 U.S. 307, 79 S. Ct. 329, 3 L.Ed. 2d 327 (1959), by the informant's record for supplying accurate information. *Commonwealth v. Norwood,* 456 Pa. 330 [319 A. 2d 908] (1974), by Tpr. Wynn's corroboration of the information, *Commonwealth v. Monte,* 459 Pa. 495, 329 A. 2d 836 (1974), or by other means. . . ." The court concluded that the second test of *Aguilar* had not been satisfied.

The affidavit in the instant case does not aver that appellant had been previously arrested for gambling offenses, or even that the affiant believed that appellant had a reputation for bookmaking. Even if the affiant was aware that appellant had prior convictions for bookmaking, that information was not related to the issuing authority.

Secondly, it does not appear that one who places a bet with a bookmaker is guilty of any crime. See 18 Pa.C.S. §5514, Act of Dec. 6, 1972, P.L. 1482, No. 334, §1. More importantly the affidavit states that "[t]he services of a confidential informant *were acquired* to identify the person(s) running the gambling operations." (Emphasis added). It is unlikely that the police would prosecute an informant they specifically hired to obtain incriminating evidence against appellant. Thus, there is nothing in the affidavit which can be construed as a declaration against the informant's penal interest.

Thirdly, the informant's information was not corroborated in sufficient depth to justify the magistrate in crediting the hearsay. The affidavit avers that the informant was proved accurate in three respects: (1) Police investigation and surveillance proved that the telephone numbers and addresses supplied by the informant were accurate; (2) The informant's assertion that he placed three bets with appellant at the Dauphin County location during September, 1974, was verified by police surveillance which placed appellant at the Dauphin County location during that period; and (3) The informant's assertion that he placed a bet with appellant at his Cumberland County residence on September 29, 1974, was verified by the presence of the affiant at the time the call was made. None of this asserted "corroboration," however, renders the informant reliable.

The verification of the addresses and telephone numbers supplied by the informant serves only to corroborate facts easily obtained. All the informant had to know to

determine appellant's address and telephone number was appellant's name. This information is virtually meaningless in assessing the informant's reliability.[2]

The affidavit claims that the informant's assertion that he placed bets with Archer at the Dauphin County location on three occasions in September, 1974, was corroborated by the fact that police surveillance placed appellant at this location "during the time period that the informant bets were being placed." Although this statement is ambiguous, a common sense reading indicates that the affiant intended to state that appellant was observed at the Dauphin County location at the precise times that the informant claimed he placed his bets. This does not, however, corroborate the informant's assertion that he placed bets *with appellant;* it only confirms that appellant was on the premises when the bets were placed. Appellant's presence at a bookmaking operation in Dauphin County would not justify a search of his home in Cumberland County unless it could be shown that *appellant* both answered the phone and accepted the bets. The only evidence which directly implicates appellant is the hearsay statement of the informant, and this crucial part of his story is not corroborated.

Similarly, the affiant's personal observation of the informant's phone call of September 29 corroborates the informant only to the extent of verifying the fact that the informant dialed appellant's phone number and seemingly placed a bet. The informant claimed that appellant answered the telephone and accepted a bet, but we have only his word. There is no support for the affiant's statement that the "telephone call was made to ARCHER." Therefore, the informant's assertions were not corroborated, and cannot be deemed reliable on that basis.

---

2. In its opinion, the lower court stated: "Surely, corroboration of readily accessible information supplies an inadequate basis for believing that an averment containing substantially less accessible information is also reliable."

The fourth factor enumerated in *Ambers* is whether the informant has given reliable information in the past. The instant affidavit states that "[n]umerous investigative leads have been furnished to this officer by the informant. All previous information furnished by this informant has been very reliable and accurate." The affidavit does not elaborate on the "investigative leads." Whether this would be sufficient in a different context, the mere furnishing of investigative leads should not provide a basis upon which to credit the hearsay statements of an anonymous informant when none of the other three tests of *Ambers* are met.[3] If a magistrate were authorized to issue a search warrant solely on the basis of this untested declaration, he would be precluded from exercising the independent judgment required by the Fourth Amendment.

The lower court held that because the informant was not shown to be reliable, the warrant was sustainable only if the facts within the affiant's knowledge were sufficient to constitute probable cause. In essence, the court considered the second possibility suggested by Justice WHITE in *Spinelli*. The only fact within the affiant's knowledge that is stated in the affidavit is his observation of the informant's phone call of September 29, 1974. This cannot constitute probable cause, however, for the very same reason that it could not serve to corroborate the informant—the officer knew only that the informant dialed the telephone number registered to appellant's residence; he did not know whether the phone was answered, and, if so, whether it was answered by appellant, or whether appellant actually accepted the bet. Again, the only evidence of this important fact is the hearsay statement of an informant who has not been shown to be reliable.

I would affirm the order of the lower court.

SPAETH, J., joins in this dissenting opinion.

---

3. The court below concluded that the informant had not been shown to have been a previously reliable and accurate source.