393 A.2d 982

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Vivian BENJAMIN.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1977.

Decided Nov. 1, 1978.

Charles W. Johns, Assistant District Attorney, and Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellant.

Bruce A. Carsia, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellee was charged with possession and possession with intent to deliver a controlled substance,[1] and criminal con-

1. The Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(30) [35 P.S. § 780–113(a)(30)].

4

spiracy.[2]  This is a Commonwealth appeal from the lower court's order granting a request for suppression made by appellee and a co-defendant.[3]  The Commonwealth seeks to justify the search of appellee on two theories:  (1) the police had probable cause to conduct the search;  and (2) the police had probable cause to arrest, thereby validating the search incident thereto.  We find the lower court's order in error, and therefore reverse.

The facts material to our disposition are as follows.  On October 8, 1976, at approximately 10:30 p. m., Officer James Holliday of the Pittsburgh Police received a telephone call from a confidential informant who stated that there were three individuals standing in front of Anita's Bar, located in the 2200 block of Centre Avenue.  The informant described the individuals as one Black male who was wearing a red jacket and glasses, another Black male, approximately six feet tall, who was wearing a brown jacket and gray slacks, and a Black female, who was heavy set and was wearing a green slacks suit.  The informant said he was in the area and had observed the trio engage in drug sales.  He also said the activity was taking place at the time of the call.  Officer Holliday and his partner, both plain clothes officers, proceeded to the area.  They observed three individuals matching the descriptions given by the informant.  A twenty to twenty-five minute surveillance was conducted, during which the officers observed what appeared to be two drug passes.  As the police car proceeded to pass the three a second time, the trio began walking away.  The officers followed, and with the help of a back-up unit, subsequently stopped the trio and took them into custody.  When appellee was searched at the Public Safety Building, sixteen and one-half spoons of heroin were found on her person.

2.  18 Pa.C.S. § 903.

3.  The suppression order encompassed all drugs found on the person of appellee in a search conducted subsequent to her arrest.  Because the Commonwealth is "substantially handicapped" by the lower court's order, this appeal is properly before us.  *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304, *cert. denied,* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963).

The lower court found that the informant's reliability was not sufficiently established and that there was no probable cause based upon the informant's tip and the police surveillance. Thus, the court held that the arrest without a warrant was illegal, as was the search incident thereto.

It is axiomatic that all arrests and searches, whether with or without a warrant, must be based upon probable cause. The standard for determining probable cause is the same for both arrests and searches. *Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973); *Commonwealth v. Harmes,* 255 Pa.Super. 147, 386 A.2d 551 (1978). In *Commonwealth v. Jackson,* 459 Pa. 669, 673–74, 331 A.2d 189, 191 (1975), our supreme court stated that:

"In determining the presence of probable cause '[t]he crucial test is whether there were facts available at the time of the initial apprehension which would justify a man of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator.' *Commonwealth v. Jones,* [457 Pa. 423,] 322 A.2d [119,] at 123 (citations omitted)."

In *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court enunciated the standard for determining the sufficiency of probable cause supporting a search when an informant's tip has been relied upon by the searching officer. The court therein established that the officer must know the underlying circumstances from which the informant concluded that the suspect was guilty of a crime, and the officer must have some reason to believe that the informant is telling the truth. The first part of the test is satisfied when the informant reveals to the officer the manner in which he obtained his information or describes the criminal activity in detail. By establishing the informant's past reliability, the second requirement is met. *Commonwealth v. Samuels,* 235 Pa.Super. 192, 340 A.2d 880 (1975); *Commonwealth v. Soychak,* 221 Pa.Super. 458, 289 A.2d 119 (1972).

6

■ Appellee argues that neither of the two requirements were satisfied in this case. To the contrary, we find that both criteria were met. The informant told Officer Holliday that he observed the heroin sales engaged in by the three individuals at the time of his telephone call. He described the location of the trio and gave detailed descriptions of the individuals. When Holliday arrived at the designated location, he saw three persons who fit the descriptions exactly.

■ As for the informant's reliability, it is true that general conclusions concerning trustworthiness are not sufficient. *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973). Some factual circumstances must be set forth to evidence the informant's reliability.

■ In *Commonwealth v. Bailey*, 460 Pa. 498, 333 A.2d 883 (1975), relied upon by appellee, the supreme court held that the informant's reliability was not adequately established. There, the police could not state how many arrests ever resulted or whether there were any convictions obtained as the result of past information supplied by the informant. The instant case is in marked contrast. Here, the officer named three individuals who were arrested and who were ultimately convicted, although the convictions occurred after appellee's arrest. In addition, Officer Holliday testified to another drug arrest, which also ultimately resulted in a conviction, although he could not recall the individual's name. Finally, the officer testified that there were other individuals, in addition to those named, who were arrested and convicted on tips supplied by this informant. Appellee makes much of the fact that the three named prior arrests did not result in convictions until after appellee's arrest. Our research, however, uncovers no case which holds that an informant must have provided information in the past that led to arrests *and* convictions. Nor do we find a requirement that any given number of arrests and convictions is necessary. Rather, in *Commonwealth v. Archer*, 238 Pa.Super. 103, 109, 352 A.2d 483, 486 (1975), we said:

"While past reliability is most often established through a showing of convictions which resulted from information

supplied by the informer, *e. g., Commonwealth v. Williams*, 236 Pa.Super. 184, 345 A.2d 267 (1975); *Commonwealth v. Ambers*, [225 Pa.Super. 381, 310 A.2d 347 (1973)], there is no logical reason for mandating that all information lead to convictions before reliability is established."
We therefore found that past "investigative leads" that proved reliable and accurate were a sufficient indicator of the informant's reliability. *See also, Commonwealth v. Pamela Ann Hunt*, 256 Pa.Super. 140, 389 A.2d 640 (1978). The essential fact is that the informant gave prior information implicating other persons in criminal activity, which information proved to be correct. We find that the informant's reliability was adequately established in this case.

This case bears a resemblance to *Commonwealth v. Altizer*, 213 Pa.Super. 201, 245 A.2d 692, *aff'd*, 436 Pa. 611, 260 A.2d 469 (1968). There, a police officer was approached by an unidentified informant who stated that he had been in a certain nearby bar, wherein another patron offered to sell him postal money orders. The informant gave a complete description of the man, and when the officer entered the bar he located a person who fit exactly the informant's description. The officer also observed the top of a package protruding from the defendant's pocket, which he assumed were money orders. The officer testified that, " 'There was no time to get a warrant or anything and I felt that maybe a felony had been committed. I approached him and took them out of his pocket.' " *Commonwealth v. Altizer, supra* at 203, 245 A.2d at 693. The defendant was then handcuffed and taken to police headquarters. In determining whether there were sufficient corroborating circumstances necessary to justify the police officer's reliance on information from an unidentified source, the court relied upon *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304, *cert. denied*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963). The *Altizer* court concluded that there were sufficient circumstances to justify police reliance on the informant's tip: (1) the fact that the person searched fit exactly the description provided by the informant, and (2) the fact that the officer was able to personally observe the money orders.

8

The court went on to ask whether, at the time of the search, sufficient knowledge was available to the officer to establish probable cause. (In the instant case, we are concerned with whether there was sufficient knowledge to establish probable cause at the time of the arrest, since the contraband was not uncovered until the search was conducted subsequently at the Public Safety Building.) The *Altizer* court applied the probable cause standard, requiring "evidence which would lead a man of reasonable caution to believe that a felony had been committed." The court found the officer's conclusion, that the large number of money orders must have indicated that they were stolen, to be supported by other circumstances, the informant's tip, the context of the taproom, and the neighborhood. The *Altizer* court thus upheld admission of the money orders into evidence against the defendant.

In the instant case, the informant was known to the police officer, unlike in *Altizer*. But even if the informant had been unidentified, there would have been sufficient corroborating circumstances to justify the police officer's reliance on the tip. First, the three individuals matched exactly the description supplied by the informant and were at the location specified, and second, the officers were able to observe what they concluded were two drug transactions in which the trio was involved. Finally applying the test for probable cause—was there "evidence which would lead a man of reasonable caution to believe that a felony had been committed"—we conclude that there was. The police observed three persons standing in front of a bar, well known for the drug traffic that had occurred there in the recent past, and saw two other individuals separately approach the group and make some exchange with one of the three. The lower court noted, however, that the officers did not observe any suspicious movement or activity on the part of appellee, herself, during the surveillance.

Although appellee was not personally engaging in the drug passes observed by the officers in this case, there was more than mere presence and police speculation upon which

to base a finding of probable cause to support her arrest. The informant reported that three individuals, including appellee, were involved in drug sales. When the officers arrived at the scene they saw appellee standing between the two males involved. When two individuals approached the group to engage in the alleged sales witnessed by the police, the trio carried on conversations with the purchasers. Appellee remained a part of the trio for the duration of the police surveillance, twenty to twenty-five minutes. She then departed with her two companions, and the three were still together when they apprehended several blocks away. The police could have reasonably concluded that the three individuals were joint participants in the criminal activity that was taking place, and that appellee was, at the very least, a co-conspirator in the delivery of the drugs.

Therefore, on the basis of the information supplied by the informant, combined with the independent surveillance of the officers and their knowledge of the area and the bar itself, we conclude that there was probable cause for the arrest, and thus the fruits derived from the subsequent search were legally obtained and are admissible against appellee.

The order of the court below is reversed and the case is remanded for further proceedings.

JACOBS, President Judge, files a dissenting opinion in which SPAETH, J., joins.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

JACOBS, President Judge, dissenting:

I respectfully dissent and would affirm the decision of the lower court.

Probable cause exists where facts and circumstances within the knowledge of the police are reasonably trustworthy and sufficient to warrant a person of reasonable caution to believe the suspect is engaged in criminal activity. Probable

cause in the case before us was based upon an informant's tip. It is well established that in order for such a tip to support a finding of probable cause, law enforcement authorities must be made aware of underlying circumstances to show (1) how the informant concluded that the suspects were engaged in criminal activity and (2) why the informant is considered to be credible or the information provided reliable. *Spinelli v. United States*, 393 U.S. 410, 413, 89 S.Ct. 584, 587, 21 L.Ed.2d 637, 641–42 (1969); *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723, 729 (1964); *Commonwealth v. Soychak*, 221 Pa.Super. 458, 464, 289 A.2d 119, 123 (1972). Neither prong of the *Aguilar-Spinelli* test has been met in this case.

At approximately 10:30 P.M. on October 8, 1976, a confidential informant placed a telephone call to Officer James Holliday of the Pittsburgh Police Department.[1] He stated that three people, all of whom were black, were standing in front of Anita's Bar in the 2200 block of Centre Avenue. He described them as a male wearing a red jacket and glasses, a second man, approximately six feet tall, wearing a brown jacket and gray slacks, and a heavy set woman wearing a green pants suit. He did not identify the three by name. The informant stated that all three were "dealing in drugs" and that he had observed "buys being made."

Although Officer Holliday testified that the informant had the ability to recognize heroin, there was no information provided to support the statements that the three persons were dealing in drugs or that buys were being made. That is, the informant did not tell Officer Holliday that he saw either heroin or money pass from the appellee and her companions to any other person. Furthermore, all of the informant's information related to the three as a group. *He provided absolutely no information about appellee or her activities as an individual.* The information received consisted only of unsupported suspicions and conclusory state-

1. Information herein attributed to the informant was related to the suppression court by James Holliday, the police officer who spoke to the informant prior to the search.

ments which are inadequate to provide probable cause for the search of appellee.

The reliability portion of the *Aguilar-Spinelli* test also went unsatisfied in this case. Officer Holliday testified that the informant had supplied him with information leading to arrests in the past. In fact, the officer named three persons, all co-defendants on one robbery charge whom he arrested following a tip by this informant. He stated that he had made other arrests based on information supplied by this informant, but he was unable to provide the court with the names or details concerning the other persons or arrests. Furthermore, although the three co-defendants mentioned above had been arrested prior to the informant's supplying the information in this case, convictions did not result in those cases until after the search of Appellee Brown.

Finally, the informant's tip was not corroborated by the independent observation of the police. *See Betrand Appeal*, 451 Pa. 381, 387, 303 A.2d 486, 489 (1973). Upon receiving the informant's call, two police officers proceeded to the 2200 block of Centre Avenue. In driving by Anita's Bar, they saw three individuals matching the description given by the informant. The police then proceeded to a location one-half block away from where they observed the trio for approximately twenty-five minutes; they did not use binoculars to aid their vision. During the observation period, they twice saw a black male approach the three and converse with them.[2] Following the conversations, the police observed what Officer Holliday described as an "exchange" between appellee's co-defendant and the fourth person. The Officer admitted that he saw neither objects nor money actually passing between the two. The men appeared to be shaking hands, however, and the police interpreted this action as a drug sale. In sum, the police saw three people who had been described to them earlier standing in front of a bar. Twice, one of the three engaged in a conversation with and made a hand movement toward a fourth person.

2. Officer Holliday did not state that he could hear what was said during these conversations.

At most, the police saw appellee standing with other people while a conversation ensued; there was no testimony that she made any gesture toward any other person. The information obtained by the police was inadequate to independently corroborate the informant's tip and, thereby, cure his unreliability.

The Commonwealth also has argued that the search of appellee could be justified as a search incident to a lawful arrest. Just as the police lacked probable cause to search the appellee, they also lacked probable cause to arrest her and conduct a search incident to the arrest. Furthermore, the search was not conducted incident to the arrest. Appellee was arrested on the street not far from the spot where she was initially observed by the police. She was not searched there, however, but was transported to the Public Safety Building where subsequently she was searched. Clearly, the search of appellee was not incident to a lawful arrest and cannot be justified on that basis.

I agree with the lower court that the evidence seized during the search of appellee's person should be suppressed. Accordingly, I would affirm.

SPAETH, J., joins this dissenting opinion.