## Commonwealth *v.* Burke, Appellant.

Argued December 4, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, and SPAETH, JJ. (VAN DER VOORT, J., absent).

*Harry L. Green,* Assistant Public Defender, for appellant.

*Stewart J. Greenleaf,* Assistant District Attorney, with him *J. David Bean,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., June 24, 1975:

Appellant, Lee M. Burke, was arrested on October 22, 1971, and charged with violating The Drug, Device

and Cosmetic Act.[1] This charge arose from a search, pursuant to a warrant, of appellant's motel room which produced narcotics. Appellant's pre-trial application to suppress evidence was denied; and on July 27, 1973, following a three-day jury trial, appellant was adjudged guilty of possession of narcotics. From the lower court's imposition of a sentence appellant appeals to this court.

On this appeal appellant assigns numerous alleged errors relating to the lawfulness of the verdict. In view of our disposition, however, we find it necessary to only consider two of appellant's contentions.

Appellant first contends that the verdict was based upon evidence obtained under an illegal search warrant and, therefore, should have been suppressed. Specifically, it is the appellant's contention that the "two-pronged" test of Aguilar v. Texas, 378 U.S. 108 (1964), as explicated in Spinelli v. United States, 393 U.S. 410 (1969), was not satisfied. We disagree. The affidavit to the search warrant stated that on October 12, 1971, a confidential informant advised one of the affiant officers that a negro male known as "Curt" was pushing heroin from the Black Horse Motel located in Plymouth Township. The informant further stated that he thought the room number at the motel was fourteen, and that "Curt" was living at the motel with a white female. The informant also told the affiant the license number of "Curt's" automobile. Furthermore, the informant stated that he had previously purchased heroin from "Curt" at the motel and at a bar in Norristown "in the preceding 2 or 3 months prior to October 12, 1971." The affiant officer stated that this informant had furnished reliable information in the past; and had previously provided information which had been instrumental in establishing the probable cause

---

1. Act of September 26, 1961, P.L. 1664, §1 et seq., 35 P.S. §780-1 et seq., since repealed, and replaced by Act of April 14, 1972, P.L. 233, No. 64, §1 et seq., 35 P.S. §780-101 et seq.

necessary for the arrest of at least three other individuals.

Surveillance conducted by the affiant on October 13, 14 and 15 revealed that "Curt" was in fact living at room number fourteen of the motel, and a check of the license number of the vehicle "Curt" was driving established that the vehicle was registered to Lee Burke, the appellant (Appellant does not dispute that he is also known as "Curt"). On October 22, 1971, surveillance by the other affiant officer disclosed that a known user and pusher of heroin was frequenting the appellant's motel room. Numerous other unidentified people visited the appellant's room on this date and confined their visits to short periods of time. All of the foregoing information appeared in the written affidavit. Additional sworn oral testimony, however, supplemented the affidavit. The affiants orally advised the issuing authority that they observed other named drug users visit the appellant's room. The issuing authority was also advised that the motel manager had telephoned one of the affiants and complained about the numerous and constant visitors to appellant's room. On the basis of all of this information, i.e., the written affidavit and the sworn oral testimony, the issuing authority found probable cause and issued the warrant on October 22, 1971.

When the police executed the warrant and entered appellant's motel room they found Sandra Chase sitting on the bed in a stuporous state apparently under the influence of alcohol or narcotics. The police further observed the appellant hurl an object out the window. This package was immediately retrieved by the police. Subsequent analysis revealed that the package contained six glassine packets of heroin. At trial appellant admitted both throwing the package out the window, and that he knew what the package contained. It was appellant's contention, however, that the heroin belonged to Sandra

Chase, and he had no knowledge of its existence until shortly before the police entered the room.

At the outset we note that the instant search warrant was applied for and executed on October 22, 1971. This was prior to the effective date of Rule 2003 of the Pennsylvania Rules of Criminal Procedure (19 P.S. Appendix), which now mandates that all information presented before the issuing authority in support of an application for a search warrant be contained in the written affidavit. Therefore, the oral testimony given under oath to the issuing authority was, in this case, a proper subject for consideration in determining if probable cause existed. *Commonwealth v. McKeever*, 229 Pa. Superior Ct. 35 (1974).

In light of the evidence of record outlined above, we conclude that the "two-pronged" test of *Aguilar*, supra, was satisfied in the present case. The credibility of the informant was sufficiently established by his reliability in the past when he had supplied information leading to at least three prior arrests. *Commonwealth v. Ambers*, 225 Pa. Superior Ct. 381 (1973); *Commonwealth v. Soychak*, 221 Pa. Superior Ct. 458 (1972). The second prong of *Aguilar*, requiring a statement of some of the underlying circumstances from which the informant arrived at his conclusion, is also satisfied. The affidavit alleged that the informant had personally purchased heroin from the appellant at the motel and at a Norristown bar in the preceding two or three months.

Having determined that the "two-pronged" test of *Aguilar* was met, the next issue is whether the information was so stale that probable cause no longer existed on the date the warrant was issued. On October 12, 1971, when the informant advised the affiant that appellant was pushing heroin, present probable cause did not exist, the reason being that the underlying circumstances in support of the informer's conclusion were based on purchases made "in the preceding 2 or 3 months prior to

October 12, 1971." As is quite apparent, there is no specification of the exact dates on which the alleged drug transactions took place. Accordingly, the issuing authority would have to assume that the purchases took place in the most remote part of the three-month period. *Commonwealth v. Novak*, 233 Pa. Superior Ct. 236 (1975). Therefore, had the police attempted to obtain a warrant on October 12, 1971, the issuing authority would have been compelled to refuse their request because he would not have before him adequate facts and circumstances from which he could reasonably conclude that the contraband was presently in the possession of the appellant. *Sgro v. United States*, 287 U.S. 206 (1932). The police, however, obviously realizing that their information was stale, initiated an investigation for the purpose of determining whether the alleged criminal activity was continuing in nature. Police surveillance conducted in the interim, i.e., between the date of reception of the information supplied by the informant, and the date of issuance of the warrant, corroborated, among other things, the fact that the appellant was *still* residing at the Black Horse Motel[2] in room number fourteen with a white female. More importantly, surveillance disclosed that numerous named drug users and traffickers, several of which were awaiting pending dispositions of drug charges, were frequenting appellant's motel room. Additionally, the police observed a virtually continuous parade of other unidentified visitors to appellant's room. These visits were of a very short duration. Indeed, the manager of the motel had complained to one of the affiants about the constant activity associated with appellant's motel room.

We hold that the information obtained as a result of police investigation and surveillance would justify the conclusion that the appellant's criminal enterprise was

---

2. We deem it important that appellant's permanent residence was located at 344 East Marshall Street, Norristown, Pennsylvania.

one of an ongoing and continuing nature. We do not construe *Commonwealth v. Shaw*, 444 Pa. 110 (1971) to be in conflict with our decision in the case at bar. In *Shaw*, supra, the only evidence which arguably demonstrated that the alleged criminal activity had continued up until the issuance of the warrant, was that automobiles bearing out-of-state licenses and "long-haired hippie-type individuals" (*Shaw*, supra at 112), were observed on the defendant's premises during the nine-month period between the date when probable cause first existed, and the date the warrant was issued and executed. In the instant case, the police did not simply observe unidentified "long-haired hippie-type individuals" visiting appellant's room; rather, their attention was drawn to the fact that appellant was still living in the motel room even though his actual residence was in Norristown; and, most importantly, *known* drug traffickers and users were continually visiting appellant at the motel room. In light of these incriminating facts, we find that the issuing authority, "concerned only with a balancing of probabilities," *United States v. Harris*, 403 U.S. 573, 579 (1971), justifiably concluded that present probable cause existed.

We now turn to the contention that the lower court committed reversible error when it permitted appellant's co-defendant, Sandra Chase, who had pleaded guilty prior to the jury being sworn, to sit throughout the trial until all the evidence had been presented. The facts surrounding this issue are as follows: The appellant was indicted for possession of heroin whereas Sandra Chase was indicted for both use and possession of heroin. While the jury was being selected for a joint trial, Chase's attorney informed the court that he wished to make a motion outside the presence of the jury. The jury was then sworn and taken to the retiring room. Chase's attorney then advised the court that Chase had elected to change her plea to guilty on the charge of use of heroin in return for which the district attorney

agreed to nolle prosse the charge of possession. Following a colloquy with Chase the court agreed to accept her guilty plea as being voluntarily and understandingly tendered. A discussion then ensued as to the effect of Chase's guilty plea upon the course of appellant's trial. Chase's counsel suggested that his client be presently removed from the case and the jury instructed that they were no longer to consider the charges against Chase.[3] The trial judge, however, declined this suggestion and ruled that Chase stay in the case until just before the jury was ready to retire, at which time he would inform them of Chase's change in plea. As can best be discerned from the record, the trial judge decided upon this course of action because he felt that if the jury were informed immediately, prior to any testimony being taken, that Chase had pleaded guilty, they would draw adverse inferences concerning the appellant, who remained on trial.

The trial thus proceeded with the jury unaware of Chase's guilty plea. Opening statements were made with the exception of Chase's counsel who elected to waive his opening. The Commonwealth then presented its case just as if it still remained for the jury to pass upon the guilt or innocence of both Chase and the appellant.[4] During the course of the trial Chase's counsel objected several times to questions by appellant's counsel, the answers to which could arguably incriminate Chase (who had already pleaded guilty). When appellant attempted to call Chase as a witness he was prohibited from doing so on the grounds that Chase was a defendant and, therefore, could not be required to take the stand. Chase's attorney was

---

3. Interestingly enough, the prosecutor for the Commonwealth stated that he "would be happy to have it that way."

4. In this connection it should be noted that the Commonwealth introduced both testimony and physical evidence which was only relevant to the charge against Chase for use of heroin, but which would have the inevitable effect of reflecting upon the appellant's guilt or innocence.

also permitted to make a closing address to the jury. It is thus readily apparent that although Chase neither cross-examined the Commonwealth's witnesses, nor offered any witnesses on her own behalf, the jury had no reason to believe other than that they were being asked to determine the guilt or innocence of two defendants. This belief was eradicated, however, when the trial judge, following counsel's final summations, in the course of his instructions to the jury, stated as follows:

"Miss Sandra Chase was a defendant in the case and she was present and when I say she was present I am telling you a fact which isn't a fact until you the Jury decide it is a fact, but as I recall the testimony it is entirely a matter for you. Sandra Chase was in apartment number 14 on that October 22, 1971 when the police first entered it after breaking in the door. She they said appeared to be under the influence of drugs. She has elected to change her plea and therefore you will have no concern with her case whatsoever. You only have now to determine the guilt or innocence of Lee M. Burke."

It is difficult to conceive of a situation that could be more prejudicial to a defendant than the one that occurred in the instant case. Indeed, our research has failed to disclose any case quite like the instant one. When a jury is first notified of a co-defendant's change of plea just before they are going to deliberate on both defendants' guilt or innocence, what could be more inherently prejudicial to the remaining defendant?

If the trial court had merely explained to the jury that Miss Chase's guilt or innocence was not at issue and that the only issue remaining was appellant's guilt or innocence, the jury would not have had knowledge of Miss Chase's guilty plea to perplex them. But when they were notified at such a late stage in the trial that Miss Chase, a co-defendant, had pleaded guilty to a crime arising out of one set of circumstances implicating both her and de-

fendant, the jury could assume that she finally admitted her part in the criminal conduct charged against both defendants. The jury could logically assume that if Miss Chase were admitting guilt, then appellant, her co-defendant, was also guilty. The jury could assume that Miss Chase had changed her plea because of the overwhelming evidence produced by the Commonwealth and did so in the hope of receiving a less severe sentence. It only remained for the jurors to conclude that the remaining defendant was guilty as well. Although a defendant is not entitled to an absolutely errorless trial, he is entitled to a fair trial. Under the circumstances of this case we cannot say that appellant received a fair trial.

The Commonwealth contends that the appellant was not incurably prejudiced by the impact of Chase's guilty plea because the change of plea did not take place in the presence of the jury, and because the jury was not informed of the change until the conclusion of the case. We agree that it is preferable that the plea occur outside the presence of the jury, but it is precisely because the jury was not informed of this change of plea until the conclusion of the case that we must reverse. Chase should have been removed from the case at the time she pleaded guilty, and the trial court should have severed her from the case at that time with a general comment to the jury which did not indicate the nature of the severance.

We do not find persuasive the fact that appellant's counsel waived objection to the judge's charge regarding Chase. Appellant's attorney registered his dissatisfaction with the procedure the trial judge chose to employ when the court first advised the parties of how he was going to handle the change of plea. Moreover, the record indicates that appellant's waiver of objection went to the fact that the court did not inform the jury that Chase had pleaded guilty to use of heroin and that possession charges against her had been nolle prossed.

In summary then, we hold that appellant be afforded a new trial at which time the evidence seized from his motel room shall be admissible.

Judgment of sentence reversed.

JACOBS, J., dissents.

———

DISSENTING OPINION BY PRICE, J.:

I cannot agree with the majority's contention that the lower court's procedure was prejudicial to appellant. To my view whether the jury is informed of a co-defendant's change of plea prior to the taking of testimony, or at the conclusion of the testimony is a matter of discretionary power with the trial court and in either case is non-prejudicial.

Further, in view of the charge and the lack of objection by appellant, I would hold the matter waived.

I would affirm the judgment of sentence.