**COMMONWEALTH of Pennsylvania**

**v.**

**Eugene McJETT, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 9, 2002.

Decided Nov. 25, 2002.

Michael G. Floyd, Philadelphia, for appellant.

Jonathan M. Levy, Philadelphia, for appellee.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, COHN, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN.

Eugene McJett (McJett) appeals a decision of the Court of Common Pleas of Philadelphia County (trial court) denying his petition for return of property in the form of $60,000 in currency and granting the Commonwealth of Pennsylvania's (Commonwealth) petition for forfeiture of the money pursuant to 42 Pa.C.S. § 6801–6802, commonly known as The Controlled Substances Forfeiture Act (Forfeiture Act). We affirm.

On September 4, 1998, members of the Philadelphia Police Department executed a search warrant at McJett's residence at 5028 North Marvine Street in the City of Philadelphia. During that search, the police seized several items, including sixty thousand dollars ($60,000) in U.S. currency, a .9 mm handgun and a triple beam scale. The search and seizure was conducted pursuant to a search warrant issued on that date and supported by an affidavit of probable cause given by Detective Michael J. Reynolds, a narcotics investigator employed by the Philadelphia District Attorney's Office (Detective Reynolds).[1]

Alleging that the warrant was issued without probable cause because it was not based on a reasonable affiant, McJett filed a motion to suppress the search warrant which was used to gain entry to his home. Additionally, arguing that there was an insufficient nexus between the cash confiscated from his home and the drug activity which allegedly was the source of the mon-

---

1. In his affidavit, Detective Reynolds stated that he spoke with Detective Mark Dunn (Detective Dunn) of the Richmond Police Department D.E.A. Task Force regarding information pertaining to the sale of cocaine by "Eugene 'Gino' Majett" [sic]. He stated that Detective Dunn relayed to him information provided by a confidential informant, who, acting against his own penal interest, indicated that McJett supplied him with cocaine in Philadelphia, Pennsylvania. Detective Dunn also relayed that the informant described "Gino" as a black male, 6'0", 250 pounds, approximately 39 years old who operated a Toyota Landcruiser and a newer model Cadillac STS. The informant also stated that "Gino" resided in a house located in the 5000 block of Marvine Street, Philadelphia, at which he had, on at least five occasions, purchased cocaine from "Gino." The informant also stated that "Gino" had been stopped in May of 1998 on the New Jersey Turnpike in a Toyota Landcruiser which was found to contain three kilograms of cocaine and that "Gino" and his girlfriend were awaiting trial. Detective Reynolds further avowed that he corroborated the information given to him by the confidential informant by checking Philadelphia Police Intelligence Files and finding, inter alia, that McJett's nickname was "Gino," he was stopped in May of 1998 in New Jersey while operating a Toyota Landcruiser which was later found to contain three-and-one-half kilograms of cocaine, and that his address was 5028 North Marvine Street, Philadelphia.

ey, McJett petitioned for return of his property.

Before the trial court, McJett testified that he obtained the $60,000 cash seized by the police, in part, from gambling winnings, and that $20,000 of the money was a gift to his wife from her mother in 1996. In support of his testimony, McJett offered into evidence receipts for the year 1996 from various Atlantic City casinos, as well as his 1996 Federal Income Tax Return. McJett also testified that he was a diabetic and the triple beam scale seized from his kitchen was used to weigh food. As to the plastic bags found in the kitchen, McJett stated that he was a fisherman and used the bags to store the fish and to give excess fish that he caught to family, friends and neighbors. He also testified that the gun seized by the police on September 4, 1998, did not belong to him and he did not know how it got in his house. However, when asked which bedroom he slept in, he stated that the members of his family slept in any of the rooms in the house at any given time.

The Commonwealth offered the testimony of Detective Reynolds who stated that he first became involved with the matter when he was contacted at the beginning of September 1998 by Detective Dunn, a task force officer from D.E.A. in Richmond, Virginia, regarding information about an individual identified as a source of supply of cocaine. He stated that, with the information he received from Detective Dunn, police reports and his own independent investigation, he prepared an affidavit in support of a search warrant to search McJett's residence. After securing the search warrant, Detective Reynolds stated that he and other officers went to McJett's residence to execute the warrant. He stated that upon searching the residence, he confiscated a purple Crown Royal velvet bag containing $60,000 in U.S. currency[2] from the front bedroom, a pistol found in a man's coat in that same bedroom, as well as a triple-beam scale, which he identified as being commonly used to weigh controlled substances for the drug trade, and some gallon-size plastic bags located next to the scale from the kitchen which he considered part of the packaging material. He also stated that some jewelry, numerous documents reflecting residency, keys and mobile phones were also seized.

The Commonwealth also offered the testimony of Detective Dunn who stated that he contacted the Philadelphia Police Department in August 1998, after an investigation he was conducting led to a cocaine supplier in Philadelphia. He stated that he advised Detective Reynolds that an individual he had in custody informed him that he had been dealing with a person known as "Gino" in Philadelphia for several months, and that cocaine seized from the informant in Virginia had allegedly come from him. Detective Dunn testified that he gave Detective Reynolds all of the information in regard to "Gino" that the informant had given to him, such as a physical description, that he operated a Toyota Landcruiser and Cadillac STS, that "Gino" had two associates, a description of the area in which "Gino" lived, and cell phone, pager and home telephone numbers.

Raymond Blassengale (Blassengale), the informant who provided Detective Dunn with information regarding McJett, also testified before the trial court. He stated that he had known McJett from around Philadelphia for approximately fifteen years. He stated that during 1998, McJett fronted cocaine to him on four occasions—twice in February, once in June and once around August 12 or 13. Blassengale stat-

---

2. Detective Reynolds stated that there were 585—$100 bills and 30—$50 bills.

ed that he and McJett would meet at a trucking station at the Murray Street exit of I–95 for McJett to deliver the cocaine to him, and he paid McJett either in Virginia or in Philadelphia.[3]

As to McJett's motion to suppress the search warrant, the trial court found that although there were no facts to establish that Blassengale had ever given information to any police department before, he was credible and his information was reliable because his story was corroborated by other sources, he made many statements to the Richmond Police Department that were against his legal interest, and McJett's reputation supported Blassengale's tip. Based on those findings, the trial court concluded that there was probable cause to issue a search warrant for McJett's residence and, therefore, the motion to suppress was without merit. As to McJett's petition to return property, the trial court found that, based on McJett's

possession of a large amount of controlled substance in May 1998, Blassengale's testimony that he had recently purchased cocaine from McJett and the fact that McJett could not credibly explain where the $60,000 came from, a sufficient nexus of events existed to warrant the seizure of his property.[4] This appeal followed.

■■■■ Initially, McJett contends that the search and seizure conducted at his home on September 4, 1998, was unlawful because there was no probable cause to support the issuance of the search warrant under which the search and seizure were conducted and, therefore, he is entitled to return of his property.[5] He argues that the testimony of the confidential informant for the Richmond police was not sufficient to establish probable cause for a search warrant because there was no way for the Philadelphia police to determine or evaluate the informant's veracity, reliability or basis of knowledge.[6]

3. The Commonwealth also offered the testimony of Detective Sergeant Quigley, a New Jersey State Police Officer, who testified that on May 21, 1998, he was called out to Milepost 94 southbound of the New Jersey Turnpike by another officer who stopped a Toyota Landcruiser for speeding and tailgating. The Toyota also fit the description of the vehicle described by New York City police as one carrying four to five kilograms of cocaine. He stated that McJett consented to a search of the vehicle but refused to sign the form. Detective Quigley then told McJett that he and his passenger were free to go; however, the vehicle was going to be impounded. After obtaining a search warrant for the vehicle the next day, the police executed a search and discovered in excess of three kilograms of cocaine in the vehicle that they seized.

4. Before the trial court, the Commonwealth conceded that a sufficient nexus did not exist between the alleged criminal activity and some of the property seized, i.e., some jewelry, keys and pictures. As such, the trial court ordered those items be returned to McJett.

5. It is well settled that the Commonwealth may not permanently acquire derivative con-

traband which it has initially seized unconstitutionally. *Commonwealth v. Anthony*, 418 Pa.Super. 82, 613 A.2d 581 (1992). Because of the underlying penal purpose of the forfeiture proceedings, the United States Supreme Court had long ago determined that the remedy for violations of the Fourth Amendment, the exclusionary rule, extends to forfeiture proceedings. *Id.* (citing *One Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965)).

6. In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings. *Commonwealth v. Gillen*, 798 A.2d 225,

Information received from confidential informants may properly form the basis of a probable cause determination. *Commonwealth v. Luv*, 557 Pa. 570, 735 A.2d 87 (1999). A determination of probable cause based upon information provided by a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, nontechnical manner. *Id.* Such a tip may constitute probable cause where police independently corroborate the tip, or where the informant has provided accurate information of criminal activity in the past, or where the informant himself participated in the criminal activity. *Id. See also Commonwealth v. Jones*, 542 Pa. 418, 668 A.2d 114 (1995) (plurality opinion).

In this case, after receiving Detective Dunn's report of the information provided to him by Blassengale, Detective Reynolds corroborated Blassengale's story by checking police files and finding that all of the factual information provided by Blassengale, including McJett's physical description, the location of his residence, the types of vehicles McJett operated, as well as information regarding a recent arrest in New Jersey for possession of three-and-one-half kilograms of cocaine, was accurate. Additionally, Blassengale admitted to participating in drug-related criminal activity with McJett when he told the Richmond police that he had entered into four separate transactions with McJett during 1998—the last transaction, to purchase cocaine on a credit basis, being only three weeks prior to the issuance and execution of the search warrant. Because Detective Reynolds independently corroborated Blassengale's story, and Blassengale admitted that he participated in drug-related criminal activity with McJett and that such activity took place at McJett's residence, there was sufficient probable cause to support the issuance of a search warrant for McJett's residence. Therefore, the trial court did not err in denying the motion to suppress.

McJett also contends that the trial court erred in ordering that the property seized from his home on September 4, 1998, be forfeited pursuant to the Forfeiture Act because the items seized were not contraband and no unlawful activity was established.[7] The Commonwealth, however, argues that because it established, by a preponderance of the evidence, that a nexus between the money and drug-related criminal activity existed, forfeiture of the money was appropriate.

The Forfeiture Act permits the forfeiture of money exchanged for drugs or used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act. 42 Pa.C.S. § 6801(a)(6)(i)(A) and (B).[8] In a forfeiture

---

227 (Pa.Super.2002) (quoting *Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177, 178–179 (1992)).

7. Our scope of review in an appeal from a forfeiture proceeding pursuant to the Forfeiture Act is limited to examining whether the trial court's findings of fact are supported by substantial evidence and whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Real Property and Improvements*, 787 A.2d 1117, 1120 n. 5 (Pa.Cmwlth.2001), *petition for allowance of*

*appeal granted*, 569 Pa. 710, 805 A.2d 526 (2002).

8. Those subsections provide:
   **(a) Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property rights shall exist in them:

   * * *

   (6)(i) All of the following:
   (A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in vio-

proceeding, the Commonwealth has the burden to establish, by a preponderance of the evidence, that a nexus between the property subject to forfeiture and an unlawful activity exists. 42 Pa.C.S. § 6802(j);[9] *Commonwealth v. Fidelity Bank Accounts,* 158 Pa.Cmwlth. 109, 631 A.2d 710, 716 (1993). Preponderance of the evidence is tantamount to a "more likely than not" standard. *Commonwealth v. $32,950 U.S. Currency,* 160 Pa.Cmwlth. 58, 634 A.2d 697, 698 n. 9 (1993), *petition for allowance of appeal denied sub nom., Commonwealth v. Friel,* 538 Pa. 637, 647 A.2d 512 (1994). Proof by a preponderance of the evidence is "often alluded to as a weighing of the evidence and a determination based upon which way the mythical scales are tipped." *Id.*

■■■■ The preponderance of the evidence standard does *not* require the Commonwealth to produce evidence directly linking seized property to illegal activity. *$32,950.00 U.S. Currency,* 634 A.2d at 699. For example, circumstantial evidence can be used to establish a party's involvement in drug activity to support a forfeiture. *Commonwealth v. Nine Thousand Three Hundred Ten Dollars U.S.C.,* 162 Pa. Cmwlth. 315, 638 A.2d 480, 484 (1994). Further, although in most cases drugs are

present at the time of seizure, there is no requirement that drugs be present. *Id.*

■■■■ Once the Commonwealth has sustained its burden of establishing such nexus, the burden of production shifts to the owner of the property to disprove the Commonwealth's case or establish a statutory defense to avoid forfeiture. *Commonwealth v. $26,556.00 Seized from Polidoro,* 672 A.2d 389 (Pa.Cmwlth.1996).

■■■■ In the case *sub judice,* the record and reasonable inferences drawn from the evidence support the trial court's finding that the items seized from McJett's house were, more likely than not, used in drug trafficking operations or were the proceeds of such operations and, as such, support the trial court's decision upholding the forfeiture of McJett's property.

First, certain events leading up to the seizure of his property provide insight as to McJett's activities at the time. In May 1998, New Jersey police stopped McJett's vehicle and found three-and-one-half kilos of cocaine in the car; McJett was subsequently arrested for possession and transporting cocaine. In August 1998, Blassengale, an informant, gave Richmond police information about McJett that was against his penal interest and corroborated by oth-

---

lation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.

(B) Money, negotiable instruments, securities or other things of value or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

9. That Section provides:

Owner's burden of proof.—At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a), the burden shall be upon the claimant to show:

(1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.

(2) That the claimant lawfully acquired the property.

(3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

er sources;[10] Blassengale described his business relationship with McJett wherein he purchased cocaine at least four times in 1998, gave an accurate accounting of McJett's May arrest in New Jersey, described the current make and model of McJett's vehicles, and knew McJett's then current address.[11] In September 1998, police found the items at issue, $60,000, a .9 mm handgun and a triple beam scale, while conducting a legal search of McJett's home. Thus, the chronology of events and their proximity in time to the 1998 seizure of McJett's property leads to a conclusion that McJett was, more likely than not, involved in the drug trade at the time.

■■■ Second, a trial judge is permitted to draw any reasonable inferences from the evidence. *Nine Thousand Three Hundred Ten Dollars U.S.C.* Thus, the trial judge's determination that items found in McJett's house were suggestive of his involvement in drug trafficking operations is supported by the evidence. For example, five hundred eighty five $100 bills and thirty $50 bills were found in a purple Crown Royal velvet bag in McJett's house. It is reasonable for the trial court to make an inference that such a quantity of money in large denominations kept in a bag in McJett's house was, more likely than not, related in some way to the drug trade. Further, and as mentioned by Detective Reynolds, the triple-beam scale and plastic baggies found in McJett's house are items that have been found to be associated with drug trafficking operations. *See $32,950.00 U.S. Currency,* 634 A.2d at 698

n. 2. (Court classified triple-beam scale found in appellant's house as drug paraphernalia; such evidence supported conclusion that appellant's son was involved in drug activity and money seized from the premises was a result of his involvement with the drug business, thus justifying its forfeiture).

Third, assuming that the Commonwealth met its initial burden of proof, McJett would be required to show, to meet his burden of persuasion, that the property was lawfully acquired and that the property was not unlawfully used or possessed. *See* 42 Pa.C.S. § 6802(j). However, the trial court found McJett to be "unworthy of belief" and, as finder of fact, the judge was solely responsible for evaluating the credibility of the witnesses and weighing their testimony. *$32,950.00 U.S. Currency,* 634 A.2d at 700 n. 12. McJett's claim that a good portion of the money seized in 1998 consisted of gambling earnings from 1996 is not supported by his production of his 1996 tax returns; these are too remote in time to support his argument. Further, McJett's claim that he owned a triple beam scale to weigh food because he is diabetic was unconvincing to the trial court. In fact, the Commonwealth showed that this particular scale, which is capable of measuring items to the nearest milligram, is more commonly used in the drug trade and not for personal use.

Thus, because sufficient facts exist in the record to support the trial court's finding of a nexus between the money seized and drug activity by McJett, its decision

---

**10.** Whether there is a substantial basis for determining that the informant is credible or his information reliable includes a consideration of whether the informant gave prior reliable information, whether the informant's story is corroborated by any other source, whether the informant's statements constituted a declaration against interest, and whether the defendant's reputation supports the informant's tip. *Commonwealth v. Salvaggio,* 307

Pa.Super. 385, 453 A.2d 637 (1982) (*citing Commonwealth v. Ambers,* 225 Pa.Super. 381, 310 A.2d 347 (1973)).

**11.** *See Nine Thousand Three Hundred Ten Dollars U.S.C.,* 638 A.2d at 484 n. 8 (noting that the federal courts have held that evidence to support a forfeiture includes evidence obtained *before* the seizure of the property).

ordering forfeiture of the $60,000 seized from McJett is affirmed.

## ORDER

**NOW,** November 25, 2002, the order of the Court of Common Pleas of Philadelphia County, in the above-captioned matter, is hereby affirmed.

DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent from the majority's holding which denies Eugene McJett's request for return of property in the form of $60,000 in currency pursuant to 42 Pa. C.S. § 6801–6802, commonly known as the Controlled Substances Forfeiture Act (Forfeiture Act), because a sufficient nexus between the $60,000 and any criminal activity does not exist to make it forfeitable.

On September 4, 1998, members of the Philadelphia Police Department executed a search warrant at McJett's residence at 5028 Marvine Street in the City of Philadelphia. During that search, the police seized several items, including sixty thousand dollars ($60,000) in U.S. currency, a .9 mm handgun and a triple beam scale. The search and seizure was conducted pursuant to a search warrant issued on that date and supported by an affidavit of probable cause given by Detective Michael J. Reynolds, a narcotics investigator employed by the Philadelphia District Attorney's Office. Alleging that there was an insufficient nexus between the cash confiscated from his home and the drug activity, which allegedly was the source of the money, McJett petitioned for return of his property. Finding that a sufficient nexus of events existed to warrant the seizure of McJett's property, based on his possession of a large amount of a controlled substance in May 1998; an informant's testimony that he had recently purchased cocaine from McJett, and the fact that McJett could not credibly explain where the $60,000 came from, the trial court denied McJett's petition. Affirming the trial court, the majority concludes that the Commonwealth established by a preponderance of the evidence that a nexus between the money and drug-related criminal activity existed, and, therefore, forfeiture of the money was appropriate. I disagree.

The Forfeiture Act permits the forfeiture of money exchanged for drugs or used or intended to be used to facilitate any violation of the Controlled Substance, Drug, Device and Cosmetic Act. 42 Pa.C.S. § 6801(a)(6)(i)(A) and (B). In a forfeiture proceeding, the Commonwealth has the burden to establish by a preponderance of the evidence that a nexus between the property subject to forfeiture and an unlawful activity exists. 42 Pa.C.S. § 6802(j).[1]

In this case, upon execution of the search warrant, the police found a triple beam scale which Detective Reynolds identified as commonly used to weigh con-

---

1. In support of its conclusion that a sufficient nexus exists, the majority cites *Commonwealth v. $32,950 U.S. Currency,* 160 Pa. Cmwlth. 58, 634 A.2d 697 (1993), *petition for allowance of appeal denied sub nom, Commonwealth v. Friel,* 538 Pa. 637, 647 A.2d 512 (1994); and *Commonwealth v. Nine Thousand Three Hundred Ten Dollars U.S.C.,* 162 Pa. Cmwlth. 315, 638 A.2d 480 (1994), stating that the preponderance of the evidence standard does not require the Commonwealth to produce evidence directly linking seized property to illegal activity and that drugs need not be present at the time of seizure. However, what these cases stand for is that there must be a direct link between the money and a specific drug transaction.

In *$32,950 U.S. Currency,* the police executed a search warrant of the petitioner's home with petitioner's son as the subject of the warrant. As a result of the search, the police confiscated several thousand dollars worth of the drug methamphetamine and drug paraphernalia. At that time, the police also arrested petitioner's son, and after conducting a

trolled substances for drug trade, one-gallon plastic bags which Detective Reynolds stated were commonly used as packaging materials in drug trade, a .9 mm handgun and $60,000. In conjunction with that evidence, the Commonwealth presented the testimony of an informant who stated that he carried on a business relationship with McJett in which McJett fronted drugs to him and testimony of a New Jersey police officer who verified that McJett had been arrested three months earlier for possession and transporting three-and-one-half kilograms of cocaine.

While I maintain no illusions about McJett, just because an individual has participated in illegal drug-related activity in the past does not necessarily mean that items located in his residence are connected to that or any other drug-related activity. What the majority has done is conclude that because property is seized as a result of a search that results in no charges, a person has to explain from where he got his money or the government can seize it, thus making it likely to increase the number of searches, because the net result is that it will become a profitable endeavor for police departments to conduct searches. If a party has liquid assets at home, or, for that matter, the home itself, those assets can be seized with testimony that in the past the party engaged in illegal activities, even if the search reveals nothing and no charges are filed. For the police, it makes it a "heads I win, tails you lose" transaction.

Because the items seized in this case are in and of themselves amenable to legal use, and the Commonwealth failed to establish any illegal use of those items, i.e., the presence of drugs or drug residue on the items or anywhere in the house or any testimony tying those funds to a particular criminal enterprise, a sufficient nexus between the $60,000 seized and any criminal activity does not exist to make it forfeitable. Accordingly, I respectfully dissent.

search of the son, recovered a key for a safe deposit box. After obtaining and executing another search warrant for the safe deposit box, the police seized $32,950.00 that was in the box. On appeal, this Court concluded that although there was no direct link between the money and any illegal activity, a sufficient nexus existed between the seized items and the illegal activity where the petitioner's son was carrying the key to the safe deposit box at the time of his drug arrest, that some of the envelopes in which the money was kept had the name of his attorney on them, and that the money seized from the safe deposit box had a strong methamphetamine odor consistent with the smell detected at the time of the original drug raid. In that case, there was a direct link.

In *Nine Thousand Three Hundred Ten Dollars U.S.C*, the petitioner arrived in Philadelphia on an Air Jamaica flight. Upon questioning by the immigration officer regarding the amount of money he was carrying, the petitioner gave the officer conflicting answers. The state police detained the petitioner and questioned him regarding the money. The police then called the phone number the petitioner gave them as his home number, and identifying himself as a drug courier who was supposed to meet petitioner, told the individual on the phone that he would sell the "load" if he did not get the promised payment. After the individual told the police officer not to do that but instead to wait for "Tony," the $9,310.00 was seized. On appeal, this Court concluded that although the petitioner did not have any drugs on him at the time the money was seized, there was a sufficient nexus between the money and the illegal activity to support the seizure where the petitioner's travel plans, manner in carrying and the amount of the money, and the presence of drug couriers on the same flight was consistent with a person trafficking drugs, and the phone conversation with the individual at the petitioner's residence supported the reasonable inference that the petitioner was involved in drug trafficking on that trip. In that case, the police could at least link the money to a specific drug transaction.