IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Corrections, State :
Correctional Institution at Rockview, :
:
Petitioner :
:
v. : No. 913 C.D. 2018
: Argued: December 13, 2018
State Civil Service Commission :
(Barnes), :
:
Respondent :

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: March 27, 2019

The Commonwealth of Pennsylvania, Department of Corrections (Department) petitions for review of the Adjudication and Order of the State Civil Service Commission (Commission) reinstating Tamela Barnes (Barnes) to her position as a Corrections Officer Trainee (COT), without back pay, to begin one year of training as a probationary employee at the State Correctional Institution at Rockview (SCI Rockview) as if she were a newly hired employee pursuant to Sections 905.1 and 951 of the Civil Service Act.[1]  We affirm.

_____

[1] Act of August 5, 1941, P.L. 752, *as amended*, added by the Act of August 27, 1963, P.L. 1257, 71 P.S. §§741.905a, 741.951.  Section 905.1 states, in relevant part, "No officer or
**(Footnote continued on next page…)**

employe of the Commonwealth shall discriminate against any person in . . . retention or any other personnel action with respect to the classified service . . . because of . . . non-merit factors." 71 P.S. §741.905a.  In turn, Section 951(b) and (d) provides:

> (b) Any person who is aggrieved by an alleged violation of section 905.1 of this act may appeal in writing to the commission within twenty calendar days of the alleged violation.  Upon receipt of such notice of appeal, the commission shall promptly schedule and hold a public hearing.

> * * *

> (d) Notwithstanding any other provisions of this section, the commission may, upon its own motion, investigate any personnel action taken pursuant to this act and, in its discretion, hold public hearings, record its findings and conclusions, and make such orders as it deems appropriate to assure observance of the provisions of this act and the rules and regulations thereunder.

71 P.S. §741.951(b), (d).  Finally, the Commission's regulations state, in relevant part:

> (c) Appeals alleging discrimination which do not include specific facts relating to discrimination may be dismissed.  Specific facts which should appear on the appeal form include:

> (1) The acts complained of.

> (2) How the treatment differs from treatment of others similarly situated.

> (3) When the acts occurred.

> (4) When and how the appellant first became aware of the alleged discrimination.

4 Pa. Code §105.12(c).

2

This Court has previously summarized the facts of this case as follows.[2]  On August 8, 2016, Barnes started her COT orientation with the Department and on that same date, acknowledged that she had received, read and agreed to abide by the Department's Code of Ethics Handbook.  She attended the Department's training academy from August 22, 2016 to September 23, 2016, and she began working at SCI Rockview as of October 2, 2016.  Barnes suffered from a painful abdominal condition following a pregnancy that necessitated visits to the emergency room on November 12, 2016, November 27, 2016, December 5, 2016, and December 20, 2016, in addition to several other doctor's appointments.  She was prescribed a narcotic medication related to her medical condition.  On November 27, 2016, she brought one pill of this medication into SCI Rockview and took the pill to ease her pain.  During her shift, Barnes informed her supervisor that she was feeling ill and she was found vomiting in the bathroom.  Barnes was taken to the emergency room by ambulance.

Barnes had been scheduled to have surgery for her condition in late January 2017, but she had emergency surgery on December 22, 2017, because of her condition.  Barnes returned to work on January 12, 2017.  During the period between October 2, 2016 and January 12, 2017, she incurred approximately 7 days of non-prescheduled leave and 12 days of unapproved unpaid absence.

After two fact-finding meetings and a pre-disciplinary conference, the Department notified Barnes by letter on March 20, 2017 that her employment as a COT was terminated as of that date.  The Department stated that she was

---

[2] *See Department of Corrections v. State Civil Service Commission (Barnes)* (Pa. Cmwlth., No. 913 C.D. 2018, filed September 6, 2018) (denying the Department's application for supersedeas).

discharged for unapproved absences, leave abuse and undependability, and for violations of Code of Ethics Sections B-15, B-21 and B-29. Section B-15 of the Code of Ethics prohibits Department employees from bringing controlled substances into a Department facility, and from using such substances on site, unless it is a prescribed medication and the employee's supervisor gives prior written approval. Section B-21 requires a Department employee to report immediately any illness, emergency, or injury to her supervisor; the employee's date of return to work; and to keep the supervisor apprised of any developments in the illness, emergency, or injury. Section B-29 mandates that Department employees comply and cooperate with internal investigations and respond completely and truthfully to any questions posed to them.

Barnes appealed her removal from employment as a probationary COT, asserting that she was discharged for discriminatory reasons motivated by her gender and disability. On June 4, 2018, following three days of evidentiary hearings, the Commission issued an Adjudication and Order. In the Adjudication, the Commission concluded that Barnes had produced sufficient evidence to demonstrate that discrimination had occurred, relying on evidence of four similarly situated male COTs with significant absences who were allowed to keep their jobs and granted leave when Barnes' request for leave was refused.[3] Because Barnes

---

[3] In this regard, the Commission explained its determination as follows:

> Due to illness, [Barnes] incurred roughly seven days of CN or non-prescheduled leave, and twelve days of AW or unapproved unpaid absence. Due to illness, COT Robert Rudy incurred roughly twenty days of AO or approved unpaid absence. He also incurred one day of AW absence, eight days of CN leave, and two days of C4 or non-prescheduled leave. COT Nathan Stewart incurred roughly one hundred and twenty-two days of YUS or

**(Footnote continued on next page…)**

4

had met the initial burden of proving a *prima facie* case of employment discrimination, the burden of production shifted to the Department to advance a legitimate nondiscriminatory reason for her dismissal. The Commission concluded that the Department had not provided a legitimate non-discriminatory reason for Barnes' discharge because of her unapproved absences, leave abuse and undependability, or violations of Code of Ethics Sections B-21 or Section B-29.

---

**(continued…)**

> extended unpaid sick leave. He also incurred thirty-five days of YUSO or FMLA [(Family and Medical Leave Act, 29 U.S.C. §§2601-2654)]/SPF unpaid sick leave. He also incurred roughly twenty-eight days of other leave identified as FMLA related. He incurred roughly nine days of AW absence and five days of CN leave. COT Justin Rouge incurred twenty-eight days of YUSO leave. He also incurred three days of other leave identified as FMLA related. He incurred two days of AW absence and one day of CN leave. COT Marlin Shope incurred roughly twenty-five days of YUSW or extended unpaid sick leave and twenty-seven days of AO leave. He incurred roughly two days of AW absence and two days of CN leave.
>
> Reviewing the foregoing records, the Commission finds that [Barnes] and the male COTs all incurred non-prescheduled leave and unapproved absences. In addition, the male COTs incurred other types of leave. [Barnes] and her husband [] testified they repeatedly asked the [Department] to grant [Barnes] leave without pay or to allow her to receive a leave donation, but the [Department] refused. Further, all of the male COTs were absent for more days than [Barnes]. Yet, unlike [Barnes], the [Department] did not remove the male COTs for unapproved absences, leave abuse, and undependability. Based on the foregoing, the Commission finds [Barnes'] evidence is sufficient, if believed and otherwise unexplained by the [Department] to show the [Department] treated her differently than the male COTs by removing her for her absences.

Commission Adjudication at 19-20 (citations omitted).

5

However, the Commission did find that the Department had a legitimate nondiscriminatory reason for its disciplinary action because Barnes, by her own admission, brought a narcotic medication into SCI Rockview without prior written approval in violation of Section B-15 of the Code of Ethics. Nevertheless, the Commission determined that "clearly, there was a misunderstanding." Commission Adjudication at 24.

As a result, the Commission concluded that the Department had not successfully rebutted the presumption of discrimination raised by Barnes' *prima facie* case, and sustained her appeal challenging her removal from probationary COT employment at SCI Rockview and overruled her removal. Commission Adjudication at 30. Accordingly, the Commission ordered that the removal be expunged from Barnes' record and that she be returned to the beginning of her probationary period with no reimbursement of wages and emoluments. *Id.* The Department then filed the instant appeal of the Commission's Order.[4]

---

[4] Our scope of review of a Commission order is limited to determining whether constitutional rights were violated, an error of law was committed, and Commission practice and procedure was violated, and whether necessary findings of fact are supported by substantial evidence. *Pennsylvania Game Commission v. State Civil Service Commission (Toth),* 747 A.2d 887, 890-91 (Pa. 2000). Substantial evidence is any relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Mihok v. Department of Public Welfare*, 607 A.2d 846, 849 (Pa. Cmwlth. 1992). In civil service cases, the Commission is the sole fact finder. *Western Center, Department of Public Welfare v. Sanders*, 518 A.2d 878, 882 (Pa. Cmwlth. 1986). Accordingly, resolution of evidentiary conflicts and determinations as to witness credibility are within the exclusive province of the Commission. *Id.* Thus, where competing testimony has been presented, the Commission is the sole finder of fact and this Court will not substitute its judgment for that of the fact finder. *Western Center, Department of Public Welfare v. Hoon*, 598 A.2d 1042, 1045 (Pa. Cmwlth. 1991). On appeal, the prevailing party before the Commission is entitled to every inference that can be logically and reasonably drawn from the evidence viewed in a light most favorable to that party. *Id.*

The Department first claims that the Commission erred in determining that Barnes established a *prima facie* case of discrimination because she did not show that she was treated differently from other similarly situated employees. In this case, the Commission found that, unlike Barnes, the male COTs were treated differently because they were granted leave for their medical issues and were not terminated for their unapproved leave. However, Barnes was not similarly situated because the male COTs were eligible for different forms of leave than Barnes due to their length of employment, employment records, and the Collective Bargaining Agreement (CBA) in effect at the time of their absences. Barnes did not have the requisite time in for FMLA or SPF leave and did not qualify for leave donations. Moreover, none of the other officers were facing disciplinary charges at the time that they requested AO leave while Barnes had improperly brought narcotics into the institution without permission.

As this Court has explained, in discrimination cases filed pursuant to Section 905.1, we have adopted

> [a] standard of proof [that] first requires the complainant [to] make out a *prima facie* case of discrimination, which [s]he does by producing sufficient evidence and, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred. When [the] complainant has made out a *prima facie* case, a presumption of discrimination arises which, if not rebutted by the appointing authority, becomes determinative of the factual issue of the case.

*Department of Health v. Nwogwugwu*, 594 A.2d 847, 850 (Pa. Cmwlth. 1991) (citation omitted).[5] "[T]he burden of establishing a *prima facie* case cannot be an

---

[5] "Traditional discrimination" cases encompass "those claims of discrimination based on race, sex, national origin, or the like." *Nwogwugwu*, 594 A.2d at 849 n.4.

onerous one," and "[w]hen the initial burden of proof is met, the burden of production shifts to the appointing authority to clearly advance a legitimate non-discriminatory reason for removal through the introduction of admissible evidence." *Id.*

However, "[t]his burden of production does not require an employer . . . to persuade the factfinder that it was actually motivated by the proffered reason or reasons. All that is required is that the employer's evidence raise a genuine issue of fact as to whether it discriminated against the complainant." *Id.* Finally:

> Once the *prima facie* case is rebutted, the presumption of discrimination drops from the case. The complainant, who retains the burden of persuasion throughout must then demonstrate, by a preponderance of the evidence, that the proffered merit reason for dismissal is merely a pretext. In other words, the complainant must prove that his dismissal was motivated by non-merit or discriminatory factors. The complainant "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

*Id.* at 850-51 (citations omitted).

As outlined above, the Commission's determination that Barnes established a *prima facie* case of discrimination is based on substantial record evidence. Specifically, the Commission found that "the male COTs all incurred pre-scheduled leave and unapproved absences," and that "all of the male COTs were absent for more days than [Barnes] . . . [y]et unlike [Barnes], the [Department] did not remove the male COTs for unapproved absences, leave abuse, and undependability." Commission Adjudication at 20. The Department acknowledges that neither Barnes nor one of the male COTs were eligible for FMLA, but fails to explain any basis for the outright denial of Barnes' requests for

8

AO, YUSO, unpaid leave, or donated leave that were granted to the similarly situated male COTs.

Moreover, the Commission specifically rejected the Department's claim that Barnes and the other male COTs were not similarly situated or that Barnes did not request leave or incorrectly requested such leave. *See* Commission Adjudication at 26-29. The Commission noted that only three of the four male COTs received differing types of FMLA, and that "[i]t is more relevant to the issue that all of the COTs received AW or unapproved paid leave and CN or non-prescheduled leave, but only [Barnes] was disciplined for it," and "the three other male COTs had AW leave in their records, too." *Id.* at 26-27 (citations omitted).

Additionally, "[t]he Commission [wa]s not persuaded by the [Department]'s argument that [Barnes] was not eligible for AO leave because her medical condition was not sufficiently serious," because "[t]here is no dispute [Barnes] left [work] by ambulance twice and underwent emergency surgery" and "[Field Human Resource Officer] Rowe testified that a new employee with a prepaid vacation could receive AO leave." Commission Adjudication at 27 (citations omitted). Further, "[t]he Commission [wa]s not persuaded by the arguments that [Barnes] either did not request leave or did not request it correctly. [She and her husband] credibly testified that before and after [her] emergency surgery they requested leave and leave donation. Insofar as the testimony of the [Department]'s witnesses is inconsistent with their testimony, we do not find it credible." *Id.* at 28-29 (citations omitted). In short, there is sufficient credible, substantial evidence supporting the Commission's determination in this regard and, again, we will not substitute our judgment for that of the Commission. *Hoon*, 598 A.2d at 1045.

9

Moreover, the Department's *post hoc* attempt to distinguish Barnes from the male COTs based on the admitted violation of the Code of Ethics is unavailing because her pre-termination evaluations did not mention the incident and Rowe admitted that this isolated incident was not the motivating reason for Barnes' removal. *See id.* at 13 ("Rowe opined that the 'primary reason' the [Department] removed [Barnes] was 'her lack of showing up for work and undependability.' [Hearing Transcript,] p. 506."). As a result, the Commission did not err in rejecting the Department's claim that Barnes failed to establish a *prima facie* case of discrimination based on the Department's assertions that she was not similarly situated to the male COTs and that she violated Section B-15 of the Code of Ethics.

The Department next claims that assuming that Barnes established a *prima facie* case of discrimination, the Commission erred in sustaining her appeal because it found that the Department had sustained its burden of proving a legitimate non-discriminatory reason for her removal, i.e., that she violated Section B-15 of the Code of Ethics by bringing narcotics into the institution without permission. The Department asserts that its burden in this regard is one of production, not persuasion and that it was not required to persuade the Commission that it was actually motivated by this non-discriminatory reason, only that it raised a genuine issue of fact as to whether it discriminated against Barnes. The Commission's finding that the Department had a legitimate non-discriminatory reason for the discipline removed the presumption of discrimination and because the Commission viewed the *prima facie* case as establishing facts to be disproved by the Department, the Commission erred in finding discrimination by the Department.

However, the Commission explained that Barnes' technical violation of bringing one dose of medicine to work in violation of Section B-15 of the Code of Ethics was the result of a misunderstanding, explaining that this misunderstanding "did not successfully rebut the presumption of discrimination." Commission Adjudication at 29. The Commission further explained that, as outlined above, this misunderstanding was not the primary or motivating reason for Barnes' removal as confirmed by Rowe, the Department's own witness, who "was a member of the pre-disciplinary panel" and "opined that the 'primary reason' the [Department] removed [Barnes] was 'her lack of showing up for work and undependability,'" and that "[Barnes'] Employee Performance Reviews for November and December 2016 rated her as 'satisfactory' in all categories except for Work Habits." Commission Adjudication at 9-10, 12, 13, 29 (citations omitted).

Finally, the Department asserts that, having found a valid non-discriminatory reason for its disciplinary action, the Commission should have then considered whether this proffered reason was pretextual. Although the Commission erred in not considering this final element, Barnes was required to "point to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions"[6] in the proffered reason for her discharge. The only evidence of pretext was Field Human Resource Officer Rowe's testimony that Barnes' leave abuse was the "primary reason" for her termination. Barnes presented no evidence

---

[6] *See Kroptavich v. Pennsylvania Power & Light Co.*, 795 A.2d 1048, 1059 (Pa. Super. 2002) ("[In the pretext stage], [t]he plaintiff must, however, point to 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them "unworthy of credence"' and hence infer that the proffered nondiscriminatory reason 'did not actually motivate' the employer's action.") (citation omitted).

that the Department was operating on pretext when it terminated her employment for bringing narcotics into the institution without permission.

However, the Department fails to apprehend that it did not successfully defend Barnes' discrimination claim based solely on its asserted non-discriminatory reason for her removal. Rather, once the purported non-discriminatory reasons were proffered, the Commission was required to weigh the credibility of the differing explanations for Barnes' removal. Although the presumption of discrimination drops from the case, as in other civil actions, the Commission must then evaluate the entire body of evidence under the preponderance of evidence standard[7] and determine which party's explanation of the Department's motivation that it believes. *See Moore v. State Civil Service Commission (Department of Corrections)*, 922 A.2d 80, 85 (Pa. Cmwlth. 2007) ("[O]nce the defendant offers evidence from which the trier of fact could rationally conclude that the decision was not discriminatorily motivated, the trier of fact must then 'decide which party's explanation of the employer's motivation it believes.'") (citation omitted).

In this case, the Department proffered several justifications and the Commission properly exercised its credibility and evidence-weighing function in rejecting all of them except for the misunderstanding regarding Barnes' possession and use of the prescription medication in violation of Section B-15 of the Ethics Code. The Commission explained its ultimate determination by finding that this misunderstanding was not the motivating factor for Barnes' illegal removal as

---

[7] *See Commonwealth v. McJett*, 811 A.2d 104, 110 (Pa. Cmwlth. 2002) ("Preponderance of the evidence is tantamount to a 'more likely than not' standard. Proof by a preponderance of the evidence is 'often alluded to as a weighing of the evidence and a determination based upon which way the mythical scales are tipped.'") (citations omitted).

stated by Rowe in her testimony. *See Moore*, 922 A.2d at 86 n.5 ("[A] complainant may succeed in proving a discrimination claim directly by persuading the court (or agency) that a discriminatory reason more likely than not motivated the employer or indirectly by showing that its proffered explanation is unworthy of belief.") (citing *Nwogwugwu*). In sum, and contrary to the Department's assertion, the Commission did not err in concluding that Barnes sustained her burden of proof that the Department improperly removed her from her probationary COT position for reasons motivated by discrimination rather than for the proffered, but rejected as not credible, reasons.[8]

---

[8] As the Commission explained:

> [Barnes] and the male COTs all incurred non-prescheduled leave and unapproved absences. [Barnes] and her husband [] testified they repeatedly asked the [Department] to grant [Barnes] leave without pay or to allow her to receive a leave donation, but the [Department] refused. Further, all of the male COTs were absent for more days than [Barnes]. Yet, unlike [Barnes], the [Department] did not remove the male COTs for unapproved absences, leave abuse, and undependability. . . . [T]he Commission cannot find that the charge related to [Barnes'] unapproved absences, leave abuse, and undependability provided the [Department] with a legitimate nondiscriminatory reason for her removal. The Commission finds that the [Department] did not successfully rebut the presumption of discrimination raised by [Barnes'] *prima facie* case. Of the four charges, only [Barnes'] violation of [the Department's] Code of Ethics Section B-15 provided a legitimate nondiscriminatory reason for discipline. In addition, Rowe was a member of the pre-disciplinary conference panel and she opined that the 'primary reason' that the [Department] removed [Barnes] was 'her lack of showing up for work and undependability.' As stated above, that is not a legitimate nondiscriminatory reason for [her] removal.

Commission Adjudication at 20, 29 (citations and footnote omitted).

13

Accordingly, the Commission's Order is affirmed.


                               _____

                               MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,                     :
Department of Corrections, State                  :
Correctional Institution at Rockview,             :
                                                  :
                           Petitioner             :
                                                  :
            v.                                    : No. 913 C.D. 2018
                                                  :
State Civil Service Commission                    :
(Barnes),                                         :
                                                  :
                           Respondent             :

# **O R D E R**

AND NOW, this 27th day of March, 2019, the order of the State Civil Service Commission dated June 4, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge